Watts & S.
1 ws372
136   198

# Fox *against* Heffner.

If one buys the defendant's property at sheriff's sale, and verbally agrees to hold it in trust for the defendant, with a right of redemption within a limited period, it is a contract resting in parol merely, and not transferring any title in the land.

ERROR to the Common Pleas of *Schuylkill* county.

Samuel Heffner against Elizabeth Fox and Samuel Morris.

Ejectment for a house and lot in Pottsville.

George Rahn testified. I sold a house as the property of Samuel Heffner, while I was sheriff. These are my conditions of sale, and made on the 21st of March 1834—sold to Burd Patterson for Mary Patterson for $200. Before the deed was made, I received a letter from B. Patterson requesting the deed to be made to Samuel Morris, dated 2d of April 1834.

The deed was made in pursuance of the letter. Morris paid the money, $202, for the whole purchase money and deed.

The plaintiff then gave in evidence a sheriff's deed from George Rahn, high sheriff of Schuylkill county, to Samuel Morris, bearing date 1st of April 1834, and acknowledged 3d of April 1834, and again acknowledged on the 27th of March 1839, for the premises mentioned in the conditions of sale.

Burd Patterson testified. I bought the property at sheriff's sale, and told Mr Heffner that he might have it if he would pay the money; but he did not do it for several days; and after awhile he brought Mr Morris there, and stated that Mr Morris would take the deed for the house; it was agreed there that Mr Morris was to retain the property for some months, not longer than a year. Heffner was to have the property back on the payment of the money. Morris took the property as his own merely as an act of friendship, and was to have the possession of the property. Morris was to convey to Heffner on the payment of the money within the time mentioned. After the time had expired, Morris wanted me to take the property, alleging that Heffner had not paid the money. I declined. At the time the agreement was made, Morris required me to agree that I would take the property if Heffner would not.

Nathaniel J. Mills testified. I cried the sheriff's sale when Rahn sold it. Sometime after Morris was in possession, perhaps two years, I had a lot on Centre and Rail-Road streets, which Morris and I had been talking about dealing for—I wanted to sell it to Morris. We could not agree, and I offered to trade for

this lot in dispute. He said he would not trade; that he had advanced the money for Heffner, and that Heffner was to have the property whenever he paid the money, and would call it back. I told him the house and lot would suit me. He said he would not let it go unless he would give Heffner notice; that it was a good property to him. He said he got the rents for his interest. He said the rents amounted to $40 or $50 per year. There were two houses on the lot. The rent now would be cheap at $100.

Daniel Hill testified. In March 1837, I was at Heffner's butcher-shop. I bought some meat. He asked me to go along to Mr Morris to make a tender of some specie. He counted it; there was $202; went down to Morris's office. Heffner said he had all the money in silver, and he was going to pay it. Morris said he would not take it, the time had gone by when the property was to be redeemed. Morris said he sold the property to Mrs Fox. Heffner asked if he could not get the property back. Said he would go and see Mrs Fox about it, and Mrs Fox said (three years ago) there was some dispute about it, and they were going to take it away from her. I went to summon Jacob Fox last evening. Mrs Fox said that Morris had told her that the property was to be redeemed, and Heffner did not redeem it in time, and he would sell it. She said if the property was Heffner's she did not want it. I understood from her at the time they were making the agreement, Morris told her that Heffner had a right to redeem it, but he had forfeited that right. She said this conversation took place in the presence of Esq. Seitzinger. She said she looked to Morris for the property clear of all encumbrances.

Cross-examined. Mrs Fox has improved that property. She has expended her money upon it. Plaintiff. Before the tender, two or three months before it, I went to Morris and asked him for some money; said he had not got it, but was to have $100 from John, and that he had bought the property for Samuel Heffner, and if he would redeem it, he would let me have the money, $600, the amount.

B. Spayd, Esq. testified. On the 19th of October 1837, Samuel Heffner called at my office and requested me to go to Elizabeth Fox to take her acknowledgment of the deed I now hold in my hand. I went with him. It is a deed from Elizabeth Fox to Samuel Heffner, dated 19th of October 1837. We came there; Heffner told our business, and requested me to read that deed to her, and then read it. I counted the money to her, I think $202 in silver. Heffner then asked her if she would accept of the deed. She replied she would have nothing to do with him; that she held or looked to Morris for the property. She went out of the house, and we came away. I told her that I came to take an acknowledgment of the deed.

I. — 2 G

[Fox v. Heffner.]

The plaintiff then brought into court $202, in specie, and tendered it to the defendants, and deposited it in court.

On the part of the defendants the court were requested to charge the jury:

1st. That the declarations of Morris, as proved by the testimony, are not such as to create a trust for Heffner, that can be enforced by law.

2d. That Mrs Fox being an innocent purchaser without notice, cannot be affected by any agreement between Morris and Heffner.

3d. That if Heffner did not redeem, or offer to redeem the property within the stipulated time, he cannot enforce his claim against the vendee—a purchaser without notice.

4th. That the declarations of Morris will not place him in the situation of a mortgagee of Heffner.

5th. The contract between Morris and Heffner being by parol, is contrary to the statute of frauds, and cannot be enforced in this action.

In answer to which the court thus instructed the jury:

1st. In answer to the first point, the court instruct you, if the jury believe the testimony of Burd Patterson and Nathaniel Mills, the money paid for the property was advanced by the defendant, Morris, for the use and benefit of Samuel Heffner; and he received the deed, with a stipulation that he would convey it to Heffner on the repayment by the plaintiff; and in equity it creates such an interest in Samuel Heffner, as under the facts disclosed in the cause would entitle him to recover.

2d. That if Mrs Fox was an innocent purchaser, without any notice of the claim of Heffner, she could not be affected by the agreement between Morris and Heffner. We cannot say to you she is an innocent purchaser without notice; this is a matter of fact for the jury to determine. And we say to you, that if the jury believe the testimony of Daniel Hill, relative to the confession of Mrs Fox, she had notice of the claim of Heffner, and stands in no better situation than Morris, if she received that notice at the time she entered into the contract, or before she made it, and paid her money to Morris, and has no more right to retain the property than Morris would have. This we leave for the determination of the jury. Do you believe the confession of Mrs Fox, which Hill has sworn she made to him? Did Morris disclose to her that Heffner had a claim to the property? Do the other facts in the cause convince you of this? If they do, Mrs Fox would not then be an innocent purchaser without notice.

3d. Heffner cannot recover against the vendee of Morris, who bought without notice of his claim. But if the vendee had notice of his claim, there is nothing to prevent a recovery by him in this action.

4th. In answer to this proposition, we say that the manner in which the business was transacted as sworn to by Mr Patterson,

made Morris the mere lender of the money to Heffner, for which he took the property as a pledge for the repayment of it in a stipulated time; and at the expiration of that period, had he chosen to relinquish the property by the tender of a deed to Heffner, he could have sued him for the money, as such a sum lent and advanced by him to Heffner, and which he would be bound in law to repay him and the interest, deducting the rents and profits of the property.

5th. This contract is not contrary to the statute of frauds as between Morris and Heffner, and between them can be enforced in this action, and also against Mrs Fox, if she purchased with notice of Heffner's claim.

6th. The court are also asked to instruct you, that there has been such laches on the part of Heffner, as bars his right to recover; and that the lapse of time is conclusive of his claim. We cannot see any thing in the cause which shows such laches; nor is the lapse of time alone sufficient to bar the plaintiff's right to recover.

*Parry* and *Farquhar*, for plaintiff in error. No part of the purchase money was paid by the plaintiff, and therefore there was no trust; there was no conveyance by the plaintiff, and therefore there could be no resulting trust reserved. The plaintiff's claim is in direct contravention of the statute of frauds and perjuries, as is clearly settled in 10 *Watts* 313; 2 *Watts* 325; 9 *Watts* 36; 6 *Watts* 534.

*Leoser*, for defendant in error. This is not the case of a direct sale to the defendant. Patterson was the purchaser, and agreed to give up his purchase in favour of Heffner, if he could get the money to pay for it. He gets Morris to loan the money, and take the deed as security for it. It is therefore a parol sale by Patterson to Heffner, and the deed of the sheriff to Morris is subject to the parol defeasance; and that such a defeasance may be established by parol, see 1 *Pow. on Mort.* 120; 9 *Serg. & Rawle* 434; 4 *Kent* 142; 5 *Binn.* 499; 3 *Watts* 188; 6 *Watts* 126; 7 *Watts* 261.

The opinion of the Court was delivered by

SERGEANT, J.—The plaintiff below claims the land under a parol agreement, between him and Morris, one of the defendants, made at the time when the sheriff's deed conveyed the land to Morris. This was an agreement, for a violation of which the plaintiff had his remedy against Morris by his action for damages; but that it should vest in him the fee simple of the land, is directly in contravention of the Act of Assembly of the 21st of March 1772, to prevent frauds and perjuries, by which all interests in land resting in parol merely, and not put in writing, are no more

than tenancies at will. It is now settled by repeated decisions of this court, that if one buys the defendant's property at sheriff's sale, and verbally agrees to hold it in trust for the defendant, with a right of redemption in the defendant within a limited period, it is a contract resting in parol merely, and not transferring any title in the land. In *Kisler* v. *Kisler,* (2 *Watts* 327) and *Robertson* v. *Robertson,* (9 *Watts* 42) it was determined, that unless there is in the transaction more than is implied from the mere violation of a parol agreement, equity will not decree the purchaser to be a trustee. In *Haines* v. *O'Conner,* (10 *Watts* 320) these cases are recognised, and it is laid down, that a purchaser at sheriff's sale, who has paid the money, can only be held a trustee *ex maleficio,* on account of the existence of fraud, and when that is the case, he is a trustee for the creditors and the debtor also, *unless* the debtor be *particeps criminis.* In the case before us there is no evidence of any collusion or act of fraud, on the part of Morris, in the purchase of the property, which could make him a trustee *ex maleficio,* and the fraud which may be alleged to exist in the mere violation of an agreement is no more than that which attends every violation of an agreement. If that were to be deemed sufficient, it would repeal the statute of frauds *instanter,* and leave titles to land to the frail and dangerous tenure of parol evidence, bringing with it all the mischiefs that compelled the enactment of statutes of this description for the protection of property.

But it seems to have been thought by the court below, that the case might be taken out of the statute of frauds, on the ground that Morris was not a purchaser in trust for Heffner, but that the real character of the transaction was a loan of money from Morris to Heffner, and an acceptance by Morris of an absolute deed from the sheriff with a parol defeasance, thus constituting in fact a mortgage of the land from Heffner to Morris. There seems to be nothing in the evidence to justify this view of the case. In the first place, the deed was not made from Heffner to Morris, nor could it be: all his title was devested by the sheriff's sale. The deed was from the sheriff, who could not by law accept a mortgage of the land, nor was such a thing contemplated on his part. He was bound to make an absolute deed to the purchaser of all the title of the debtor in the land. The truth of the case evidently is, that Morris took Patterson's place as purchaser at the sheriff's sale, and received the deed from the sheriff in that capacity, and could receive it in no other, without violating the Acts of Assembly for the sale of lands by execution.

In the next place, there is no evidence that Morris lent the money to Heffner. Heffner did not receive the money nor pay it over. It was Morris that paid the sheriff with his own money, and furnished the consideration of the sheriff's deed, in lieu of Patterson. Morris told Miller he had advanced the money for Heffner, and that Heffner was to have the property whenever he

[Fox v. Heffner.]

paid the money. Patterson also says, he brought Morris there, and stated that Morris would take the deed for the house, and it was agreed there that Morris was to retain the property for some months, not longer than a year. Heffner was to have the property back on payment of the money. The evidence all goes in opposition to the allegation of the plaintiff's counsel, that Patterson agreed to repay the money to Morris if Heffner did not.

There are several circumstances in this case tending to prove it inequitable, that the plaintiff should now recover this property, were it free from the insuperable objection of the Act of Assembly. The parol contract appears to have been made in April 1834. Morris then went into possession, and afterwards in vain demanded his money of the plaintiff. It was not till March 1837, three years afterwards, that the plaintiff tendered the money to Heffner, after the latter had sold the property. This was a delay of two years beyond the time limited, during which the plaintiff took the chance of the rise or fall of the property. Morris was not bound to lie out of his money. In the meanwhile Morris had articled to sell the property to Koch & Zimmerman, on the 7th of September 1836, and received twenty-five dollars on the sale; and on the 18th of December 1836, they assigned to Mrs. Fox, who received a deed on the 3d of April 1837, (when by the articles the money was to be paid) and made improvements between that time and the 20th of October 1837, to the amount of from thirty to fifty dollars. It was not till December 1837, that the plaintiff tendered her $202, and requested her to execute a deed to him. This she refused, saying she held or looked to Morris for the property. It would, we think, be unjust to take away the property under these circumstances, from Mrs. Fox, who had expended her money on the faith of the deed to Morris, as well as his possession, and his article with Koch & Zimmerman, and to vest it in one who had been guilty of so much laches.

We are, therefore, of opinion, that the court below erred in their charge to the jury, and that the judgment must be reversed.

Judgment reversed, and *venire facias de novo* awarded.