## Faust *versus* Haas.

73   295
166   515

1. In a suit at law to administer equity, the judge sits as chancellor, assisted by the jury, who are to determine the credibility of witnesses and conflicting testimony; but the conscience of the chancellor must be satisfied of the sufficiency of the evidence.

2. If the evidence be too vague, uncertain or doubtful to establish the equity set up, the judge must withdraw it from the jury.

3. Faust's property was about to be sold by the sheriff, an attorney by arrangement with Faust and a judgment-creditor agreed to buy it for Faust; under this it was struck down to the attorney; it was afterwards agreed that Haas, another judgment-creditor whom the proceeds would reach, should pay the purchase-money to the sheriff, take the deed and give Faust a time named to repay him. Under this arrangement the deed was made to Haas under the direction of the purchaser; Haas claimed to hold the property. *Held*, that he was trustee *ex maleficio* for Faust.

4. Where artifice or trick are resorted to to procure property at sheriff's sale at an under value, the purchaser takes as trustee for the person misled.

March 4th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county:* No. 244, to January Term 1871.

This was a proceeding by Adam S. Haas against Henry H. Faust, under the Act of June 13th 1836, section 105 (Executions), to recover possession of land of the defendant sold under an execution at the suit of W. B. Monroe against him; the sheriff's deed was made to the defendant June 22d 1868. The purchase-money was $1200. To the venditioni the sheriff returned, "land sold to Adam S. Haas for $1200. Faust continuing in possession, Haas on the 22d of July 1868 gave him notice to give up the possession in three months; having failed to do so, Haas made application to two justices of the peace to institute proceedings for recovery of the possession. A precept was accordingly issued by the justices to the sheriff for summoning a jury and to Faust, to meet on the 13th of February 1869. On that day Faust made an affidavit, viz.: "I claim to hold the (premises in dispute), under the sheriff of Schuylkill county, who sold the same as my property, but the same was purchased for me by Herman Graeff, Esq., as my attorney, and he took and acquired the same at said sale as my trustee; and any title acquired by the said Adam S. Haas

[Faust *v.* Haas.]

was not as purchaser at said sheriff's sale, but as the vendee of
said Graeff, subject to my equitable interest in the same." Faust
having given bond with sureties according to the Act of Assem-
bly, the case was removed into the Court of Common Pleas. Haas
filed a declaration to which Faust pleaded "not guilty;" the case
was tried before Ryon, P. J.

For the defendant H. B. Graeff, Esq., testified that he purchased
the property at sheriff's sale as agent for Faust; witness had charge
of a judgment in favor of Seitzinger and of executions against Faust,
which would have been covered if the property had brought $1400
or $1500; Faust applied to witness to make an arrangement as to
the Seitzinger judgment, so that he, Faust, could retain the pro-
perty; at witness' suggestion Faust went to see Seitzinger, to
ascertain if he would assist him to purchase the property at the
sale; Seitzinger and Faust made an arrangement in witness' office;
witness was to buy the property for Faust; Seitzinger was to furnish
the money to pay the purchase-money, and in consideration Faust
was to secure Seitzinger's judgment, and at the time Faust gave
Seitzinger an order on one of his debtors for $60 on account of the
judgment. Within a day or two Faust and Haas came together
to the office of witness; Haas held a judgment against Faust;
they made an arrangement by which Faust was to secure to Haas
his interest at his mother's death in his father's estate; this was
accepted by Haas, and it was understood that he was not to bid at
the sheriff's sale, Haas knowing that witness was to buy the pro-
perty for Faust; Mr. Shindel, attorney for a Saving Fund Asso-
ciation, which held a mortgage of $800 against the property,
authorized witness to buy it for the Saving Fund to protect it, if
the other arrangement should not be carried out. Witness attended
the sale and bought the property for Faust for $1200. Subse-
quently Seitzinger, Haas and Faust came to office of witness and
said there had been an arrangement by which Haas was to take
the title to the property, he to be paid $400—the difference between
the amount of the mortgage and the $1200 purchase-money—and
Saving Fund mortgage to be a lien on the property. Haas was to
advance the $400 for the purchase-money, and Faust to have
three and six months to pay it back and to pay any assessments
which Haas might pay in the meantime to the Saving Fund.

"I stated to the parties at the time (says Graeff), that this
arrangement ought to be in writing, but I had no time that day to
write it, but would have the deed acknowledged on Monday, and
bring it home with me, and draw up the writing, and they were to
come on the next Monday, and I was to deliver the deed to Haas.
The $400 was then raised. Seitzinger was to endorse Haas's note
for $500, and in that way the money was to be raised from Judge
Heilner. The parties then all left my office together. Haas
brought a check of Judge Heilner to my house that evening for

[Faust v. Haas.]

$400.  On Monday I directed the sheriff to have the deed acknowledged.  The other attorneys and myself were desirous to have the $400 distributed without costs, and we got together and agreed in writing how the money should be distributed.  We made out the list; we then discovered that the Saving Fund would not be paid from an accumulation of interest on dower.  I knew of the interest on dower, and represented the claim.  Mr. Shindel then said that unless the difference should be made up by the purchaser he would not agree that the $800 Saving Fund claim should be continued on the property.  I, of course, could not say for Mr. Haas that he would pay the difference, and I kept the check.  The next day I went and saw Seitzinger, and told him of the hitch in the arrangement.  The next day, or a day or two afterward, Mr. Haas came to me and got the check.  I can't say anything further about it.  Haas, it seems, came down and took the deed; I had not authorized him to take the deed.  Seitzinger gave me no money; I received from Faust no money; all the money I got was the check of Judge Heilner, payable to Haas's order; Seitzinger had made the arrangement with the Saving Fund without reference to Haas or any other one; Haas was not required to make that part of the arrangement; the arrangement was made before Haas came into it. * * * I was to bid $1200 for the Saving Fund; I directed the sheriff to make Haas a deed; * * Shindel told me he would not agree to let the mortgage remain on the property, unless the purchaser would pay the $80; I could not agree that Haas should pay this; at this time I had no power to represent Haas; I approved the second arrangement; I had nothing to do with this arrangement, except to pay the $400 to sheriff."

The defendant made the following offers, which were rejected, and bills of exception sealed :—

1. To prove by H. B. Graeff, Esq., that the property purchased by him for H. H. Faust had a market value of $1800, and that he could have sold the same for that amount before any arrangement was made with Adam S. Haas to become a trustee for H. H. Faust in his stead.

2. The assignment by Henry H. Faust, dated the 26th of May 1868, to Adam S. Haas of the interest of said Faust in the money remaining in said land for his mother's dower, which would accrue to him on the death of his mother, Rebecca Faust, to secure to said Haas the sum of $111.79, the amount of a judgment of said Haas against said H. H. Faust, in consideration whereof, said Haas agreed not to become a bidder at the sheriff's sale of the property of H. H. Faust, but assented to the arrangement that Graeff should or might purchase the property of H. H. Faust at the sheriff's sale for Faust pursuant to his arrangement with Seitzinger.  This it is proposed to follow with proof of the same

[Faust *v.* Haas.]

facts outside of said written assignment by Nicholas Seitzinger, a witness now in court.

Nicholas Seitzinger testified: "I found I was pretty well back on the list, and saw one of the officers of the Tamaqua Saving Fund, and I asked him if the mortgage could stand, and he said if the dues in arrears were paid up he thought an arrangement could be made. After a few days Adam S. Haas and old man Haas came over to my house, and asked if I intended to bid on the property. I told them I should not lose my claim. They then said they would give me their note for the amount of my claim, if I would not bid. I told them that would do. Shortly before the sale, Haas notified me that I would have to look out for my claim against Faust; that they had got security for their claim, and they did not intend to bid on the property of Faust, and they did not want the property. Then I expected I would have to buy the property. Faust came to see me before the sale a short time, and said if I would help him (Faust) he would pay my claim, and we went to Graeff's office. Faust gave me an order for $60, and I told Graeff he might bid $1500 or $1600. After the sale a day or so, Haas allowed, that better let them have the land, as I did not want it; I can't tell which one of Haas's said this; I said if you will bring Faust in and he says so, I will agree to it. Faust did agree to it, but the Saving Fund would not agree to it; the Saving Fund claimed $60 higher than they first claimed; I did not know that Haas would pay this, and I went to Haas's house and saw them, and they refused to take it; I then said I would have to take it; then the Haas's came again and agreed to take it at the $60, but then Mr. Graeff came again and said the Saving Fund demanded $75 or $70; the four hundred was fixed before this; I went to Judge Heilner and told him he must give Adam Haas $500, I would endorse his note; Haas said they could not raise the $1200; when I first told Graeff to bid the $1500 or $1600 Haas knew nothing about the arrangement; I was to buy the property for Faust; I expected Faust would pay me back; Haas agreed to give Faust three and six months; I told Haas that Faust was to have the property back upon paying me the purchase-money; I went up to Haas's two or three days after Haas had got the deed; I saw Adam S. Haas and told him that Faust said he was not going to let him have the property back, and Haas said, I have got the sheriff's deed, and I am going to keep it; I had a balance to get yet; I had only $60 on my claim, and I said I only want you to sign this note for my balance; Haas said he had paid enough for the property; I said you are most too young to act the rascal that way; then I said you will give Faust the property back; he said no, I have got the sheriff's title and I am going to keep it; I said, Adam, if you don't live up to your agreement I will give Faust the money to redeem this;

there was no agreement made, because we were afraid the Saving Fund would object to the acknowledgement of the deed, and that is the reason we did not put the agreement in writing; there was an arrangement by which Faust was to sign an agreement, but the reason we did not put it in writing before Haas got the deed was for fear Mr. Shindel would object to the acknowledgments; I gave Faust the money, $1250; this was within the bound of the time Haas was to give Faust to pay the money; Faust was still in possession of the property."

The defendant gave evidence in rebuttal in answer to defendant's evidence and generally to his case.

Plaintiff then offered to prove that Faust, the defendant, said that he had given up the land bought by Haas; that he could not redeem it, and was going to move out of the county.

The offer was objected to by the defendant, admitted by the court, and a bill of exceptions sealed.

The evidence was in accordance with the offer.

· The defendant submitted the following points; the court refused them all, and instructed the jury to find for the plaintiff.

1. If the jury believe that the agreement between Haas and Faust, or Graeff, as the attorney of Faust, was that before the sheriff's deed was to be delivered to Haas, that he, Haas, was to execute a written contract, whereby he was to agree that Faust should have the right to repay Haas in two instalments, at three and six months, for the money paid by Haas to the sheriff, and his other outlay and expenses on account of the property, and that Haas, in violation of this agreement, went to the sheriff's office and took up the deed, he is a trustee, malâ fide, and cannot now take advantage of the fact that such written agreement was not entered into.

2. If the jury believe the facts as stated in the next preceding point, and that he procured the deed through negotiations with Faust, and Graeff as his attorney, and knew that Graeff purchased at the sheriff's sale for Faust, then Haas became a trustee, malâ fide, for Faust.

3. If the jury believe the facts as stated in the next two preceding points, and that within a day or two after he took up the deed he was called on by Faust; and that he, Haas, then declared that Faust should not have the property; that he didn't care for his agreement with him, Faust—then the jury may infer that Haas took up the deed from the sheriff with the intent to defraud Faust, and that Haas became thereby a trustee for Faust, malâ fide.

The verdict was for the plaintiff, the defendant took a writ of error; he assigned for error :

1, 2. The rejection of his offers of evidence.

3. The admission of plaintiff's offer of evidence.

4, 5, 6. The answers to the points.

[Faust *v.* Haas.]

7. The instructions to the jury.

*G. E. Farquhar* and *F. W. Hughes*, for plaintiff in error, cited as to 4th to 7th errors, Strimpfler *v.* Roberts, 6 Harris 283; Edwards *v.* Edwards, 3 Wright 369; German *v.* Gabbald, 3 Binn. 302.

*M. Strouse* and *J. W. Ryon*, for defendant in error, cited Fox *v.* Heffner, 1 W. & S. 372; Barnet *v.* Dougherty, 8 Casey 371.

The opinion of the court was delivered, March 10th 1873, by
SHARSWOOD, J.—It is perfectly well settled that in the administration of equity in the courts of this state through common-law forms, the judge sits as a chancellor, assisted by the jury, who are to determine the credibility of the witnesses and the effect of conflicting testimony.  But the conscience of the judge as chancellor must be satisfied of the sufficiency of the evidence if believed.  If it be too vague, uncertain, or doubtful, to establish the equity set up, it is his duty to withdraw it from the jury by a nonsuit or a binding instruction in his charge, as the case may require : Mc-Barron *v.* Glass, 6 Casey 133; Todd *v.* Campbell, 8 Casey 252; Bennett *v.* Fulmer, 13 Wright 162; Miller *v.* Hartle, 3 P. F. Smith 111; Church *v.* Ruland, 14 Id. 432.  But applying this principle to the evidence in this case, we think that there was quite enough to satisfy the conscience that Haas should be decreed to be a trustee for Faust.  It is an undisputed fact that the property was bid off at sheriff's sale by Mr. Graeff as attorney for Faust.  The relation in which he stood to Faust was a confidential one, and he acknowledged the trust.  To whom the deed was to be made was not then finally arranged, but it was afterwards distinctly agreed, Haas being a party, that if the mortgage to the Tamaqua Saving Fund Association could remain, the balance of the purchase-money should be raised and paid by Haas, under an agreement that Faust was to have three and six months to pay it back, and was also to reimburse Haas any assessments he might subsequently have to pay on the mortgage.  Mr. Graeff testified : "I stated to the parties at the time, that this arrangement ought to be in writing, but I had no time that day to write it, but that I would have the deed acknowledged on Monday, and bring it home with me and draw up the writing, and they were to come on the next Monday, and I was to deliver the deed to Haas."  When they came to settle at the sheriff's office, it appeared that there was interest due on a dower right which was prior to the mortgage, and the attorney of the Saving Fund insisted that this interest should be paid before he would agree that the mortgage should remain.  In consequence of this difficulty the arrangement was

not carried out. But anticipating no such difficulty, Mr. Graeff had directed that the sheriff's deed should be made to Haas and acknowledged, which had accordingly been done. Haas then raised the full amount of the bid, paid it to the sheriff, and received from him the deed. This was done without the knowledge and consent of either Graeff or Faust. He then claimed, and now claims, to hold the property as his own absolutely. That this was a breach of good faith on the part of Haas cannot be doubted. It was not merely the violation of a verbal agreement. He obtained the legal title by an artifice—by getting possession of the deed without the consent of those who alone had a right to direct to whom it should be delivered, Mr. Graeff, the actual purchaser at the sheriff's sale, and Faust, for whom he had bought. Haas, indeed, by a previous agreement with Faust, by which Faust was to secure him the payment of a judgment which he held on the premises by an assignment of all his (Faust's) interest in his father's estate after his mother's death, had promised that he would not be a bidder at the sale. "That," says Mr. Graeff, "was clearly the understanding."

Under these circumstances we are of opinion that Haas was a trustee for Faust *ex maleficio*, not within the prohibition of the Statute of Frauds, which, having been intended to prevent fraud, is never itself to be made the instrument of one. It is certainly true, that if a man buys at sheriff's sale, or otherwise, and pays his own money for the purchase, no verbal agreement before or afterwards to hold for another will make him a trustee: Fox v. Heffner, 1 W. & S. 372; Jackman v. Ringland, 4 Id. 149; Barnet v. Dougherty, 8 Casey 371. But where artifice and trick are resorted to in order to procure the property at an undervalue, as for example, by deterring bidders at a sheriff's sale, or in any other way, the rule is different. It will be sufficient to refer to Gilbert v. Hoffman, 2 Watts 66; McKennan v. Pry, 6 Id. 137; Brown v. Dysinger, 1 Rawle 408; Haines v. O'Conner, 10 Watts 313; Beegle v. Wentz, 5 P. F. Smith 369; Lingenfelter v. Ritchey, 8 Id. 485; Seichrist's Appeal, 16 Id. 237. "Although," says Mr. Justice Agnew, in the case last cited, "no one can be compelled to part with their own title by force of a mere verbal bargain, yet when he procures a title from another which he could not have obtained except by a confidence reposed in him, the case is different. Then if he abuse the confidence so reposed he is converted into a trustee *ex maleficio*. The statute which was intended to prevent frauds turns against him as the perpetrator of a fraud." We think, therefore, the learned judge below erred in directing the jury that the plaintiff was entitled to recover. He should have submitted the case to them upon the whole evidence, with instructions, that if they believed that Haas obtained possession

[Faust *v.* Haas.]

of the sheriff's deed 'malâ fide, their verdict should be for the defendant.

In the view we have taken of the case, it follows also that the evidence offered by the defendant and rejected, which form the subjects of the first and second assignments of error, was relevant, and should have been admitted, and that which was offered by the plaintiff and received, which is complained of in the third assignment, was irrelevant, and should have been rejected.

Judgment reversed, and *venire facias de novo* awarded.