# CHARLESTON.

BRIGHT v. KNIGHT.

Submitted January 21, 1891.—Decided March 11, 1891.

1. EVIDENCE—TRUSTS AND TRUSTEES.

Parol evidence may be received to establish a trust, but the trusts to be thus proven are confined to the cases of resulting trusts, which arise from an implication of law, as, for example, where the money is paid by one and the property purchased and the title taken in another. In such case and similar cases the legal title is in one, and the equitable title in another, and to prevent fraud the fact of payment may be shown by parol evidence, and equity will decree the purchaser a trustee for the person who paid the purchase-money.

2. EVIDENCE—TRUSTS AND TRUSTEES.

Where the statute of frauds does not apply, and a trust of land is permitted to be established by parol evidence, to establish such trust the facts must be alleged, and the evidence to support them must be full, clear, and satisfactory.

3. TITLE.

A court of equity will not settle the title and boundaries of land, when the plaintiff has no equity against the party who is holding the land.

*J. M. Mc Whorter* and *J. W. Davis* for appellants, cited 4 Mon. 488 ; 3 Bibb 177 ; Id. 502 ; 7 Dana 235 ; 3 Gratt. 518 ; 27 W. Va. 717 ; Id. 475 ; 15 W. Va. 567.

*J. W. Harris* for appellees, cited 30 W. Va. 258 ; 32 W. Va. 17 ; 23 W. Va. 480 ; 30 Gratt. 751.

ENGLISH, JUDGE:

The original bill in this cause was filed by Jennie Bright, Helen E. Bright and others against James Knight, and Jesse Bright, in his own right and as administrator of Margaret Bright, deceased, in the Circuit Court of Greenbrier county. Jesse Bright was alleged to be the husband of Margaret Bright, who died on the 5th of March, 1880, and said Jesse Bright was appointed her administrator. It was further alleged in said bill that said Margaret Bright was at the time of her death the owner and in possession of ten acres of land near the town of Lewisburg, in said county, on which were valuable and lasting improvements; that said land was purchased by said Margaret Bright at a sale made under a deed of trust given by Matthew V. Peers to George H. Peers; that said purchase was made on credit, said Margaret Bright executing her bonds for the purchase-money, with Jesse Bright, F. H. Ludington, and James Knight as her sureties; that she failed to pay said bonds at maturity, and that she and her sureties were sued thereon, and a decree was rendered for the sale of said land in 1875.

It is further alleged that said land was sold in 1881, and said Knight bought it for the children and heirs at law of the said Margaret Bright, deceased; that prior to said sale said Knight had been boarding with the plaintiff, Jennie Bright, and continued to board with her until some time in April, 1882, with the agreement that the price of his board should go as a payment on the advance he had made for the children of said Margaret Bright, deceased, in payment of said Peers's decree; that the original amount due from said Margaret Bright to G. H. Peers, in 1876, was three hundred and eighty three dollars and ninety four cents, as shown by the delivery-bond taken on the execution issued on said decree; and that at the same term of court, at which said decree was rendered against said Margaret Bright and her sureties a judgment was rendered in said Circuit Court in favor of said Margaret Bright against F. H. and James C. Ludington for the sum of four hundred and sixteen dollars and fifty cents, as of the 29th of June, 1876; that said James Knight was sheriff of said county

during the entire year 1876, and that by an agreement between said Margaret Bright and James Knight he was to take and collect the execution to be issued in favor of said Margaret Bright against said Ludingtons, and apply enough of the proceeds thereof to discharge the said G. H. Peers decree; that said execution was issued and went into the hands of said Knight as such sheriff, and that from the time he received it until the return-day thereof the said James C. Ludington had ample personal property out of which said execution, and every part thereof, could have been made, which property was well known to said James Knight, and said execution could have been made by him if he had tried to make the same, but that, either through negligence or favoritism to the defendants therein, he failed to make the money on said execution, but that equity would hold that done which ought to have been done, and, applying this principle, the debt was paid, and the heirs of said Margaret Bright were entitled to a deed for said land; and, to show that said Knight so understood the matter, the plaintiffs allege that the children and heirs of Margaret Bright have had the exclusive disposition and use of said property from the date of her death until the time of filing said bill; and to further show that said James Knight did not set up any claim to said property, as the owner thereof, the house thereon was consumed by fire after his supposed claim, and the children and heirs at law of Margaret Bright rebuilt the same in good faith, believing that no incumbrance was on the land, which rebuilding cost seven or eight hundred dollars, which was done with the knowledge, consent and approval of said Knight, and without any claim set up by him at the time of the rebuilding that he was the real owner of the land; and that the said Knight delayed his purpose to claim the title to said property until the July term, 1887, of the Circuit Court of said county, at which time he obtained a writ of possession to place him in possession of said property, said writ to issue after the 1st day of November, 1887; and they pray that said Knight be compelled to settle with them; and make them a deed for said land; and they also ask a reference to a commissioner in order that it may be shown that he

has been fully paid for the advance he made to purchase said land, and that said Knight might be enjoined and restrained from taking possession of said land under said writ of possession until said account should be taken, and the further order of the court.

The said James Knight answered said bill, in which he says that he, F. H. Ludington, and Jesse Bright were sureties of Margaret Bright in a bond given for purchase-money of the house and lot in the bill mentioned, and that on the 30th day of October, 1875, said Circuit Court, in the suit of George H. Peers against said Margaret Bright and others, rendered a personal decree against said sureties for the amount due on said bond, and decreed the sale of said house and lot to satisfy said balance of purchase-money, and provided in said decree that, if any of said sureties should satisfy said decree for purchase-money, the sale of said house and lot should be made for his benefit; that the said Jesse Bright and F. H. Ludington were insolvent, and that he was compelled to pay the balance of the purchase-money due from said Margaret Bright, and that, this fact and the amount of said payment having been made to appear in said cause to said court, a decree was rendered therein at the November term, 1876, directing said house and lot to be sold for his benefit; that sale was made of said house and lot on the 14th day of April, 1883, and the property was purchased by him, the purchase-money settled, the sale confirmed by said court on the 2d day of May, 1883, and a deed afterwards made to him.

He denies that he purchased said land for any one else than himself, or that it was bought for the children and heirs at law of Margaret Bright, deceased, and he denies all the allegations in the bill inconsistent with the foregoing statement. Said Knight also denies that he ever boarded with said Jennie Bright, or made any agreement with her or any one on her behalf, that any board or other things should go as a credit in payment of the Peers decree, or the amount paid by him for said Margaret Bright. He avers that said Jesse Bright and his children, the other parties to said suit, continued to occupy said property after respondent's said purchase, and that he and several of his

children are still in the occupation thereof, but that none of them ever claimed to occupy any other position than as his tenants; that when he obtained said writ of possession, in July, 1887, said Jesse Bright agreed to surrender possession on the 1st of November, 1887, and to take good care of the property until that time, if said Knight would allow him to remain until said period, which was agreed upon, and the counsel of said Bright had an addition made to said order to the effect that said order should not issue until the 1st of November, 1887, but that, instead of surrendering said property as he agreed, the said Bright caused this suit to be instituted to get further use of said property.

He also denies that he could ever have made anything on the said execution in favor of Margaret Bright against F. H. and J. C. Ludington, and says that he never agreed to take and collect said execution as alleged; that he never received one cent thereon; and that said execution was afterwards fully paid to said Jesse Bright, as administrator of Margaret Bright, by G. S. Bierly, upon a portion of whose lands said judgment, on which it was based, was a lien; and he alleges that said house was destroyed by fire and rebuilt long before the sale to him on the 14th of April, 1883; and he denies having conceded to the plaintiffs or said Jesse Bright any right in said property, but alleges that they remained on said property by his permission, which he from the time of said sale claimed as his own; and he denies all of the allegations of plaintiffs' bill inconsistent with his answer.

This answer was filed and was replied to generally; and the plaintiffs filed an amended bill, in which they allege that the two acres of land on which said house is situated was dropped from the land-books for Greenbrier county in 1851, and have not been entered thereon since, unless said land was included in the Peers lot, and if it was intended to be included in said lot, no title has passed for the two acres, for no title has ever been vested in the grantor; that by entering on said two-acre lot after it had become forfeited to the State for non-entry, building their house thereon, and paying the taxes thereon for more than ten years, they have, under the laws of the State of West

Virginia, acquired title against all claimants whatever; that the house was built by plaintiffs in their own right, and not as heirs of Margaret Bright, as is shown by the mechanic's lien recorded against them and others, a copy of which they exhibit, and they also exhibit the survey and plat, which they claim shows the facts alleged in their amended bill, and which is taken from the old surveyor's books.

The defendant James Knight, for answer to said amended bill, denies that any portion of the land in the bill mentioned was ever dropped from the land-books as alleged, or otherwise became forfeited. He also denies the allegation that he has no title to the two acres, upon which the house mentioned in the bill is situate, but says he has a good title thereto. He also denies that the plaintiffs or any of them have ever had any adversary possession of any part of the land in the bill mentioned, but, on the contrary, says that the plaintiffs' original bill shows that they claim under him and Margaret Bright, which is the fact. He denies that Exhibits 1 and 2, filed with said amended bill, are evidence of anything, or are copies from the surveyor's book, and he excepts to said exhibits as evidence in the cause.

Numerous depositions were taken in the cause by both plaintiffs and defendants; and on the 16th day of November, 1889, the cause was heard, and the bill dismissed, and the plaintiffs appealed.

The plaintiffs rely upon the allegation in their bill that under the decree of sale made in 1875, which was executed in 1881, the defendant James Knight bought in the ten acres of land in the bill mentioned for the children and heirs at law of Margaret Bright, deceased; that said Knight had, prior to the said sale, been boarding with Jennie Bright, and continued to board with her until some time in the month of April, 1882, with the agreement that the price of his board should go as a payment on the advance he had made for the children of Margaret Bright, deceased, in the payment of the Peers decree. This alleged agreement is entirely unsupported by the evidence in the cause.

Jesse Bright, in one of his depositions, states, in answer to a question, that "it was certainly the understanding between

me and Mr. Knight that he was to bid in the property for Jennie Bright," but not, as the bill alleges, "for the children and heirs .at law of Margaret Bright, deceased;" and no witness in the cause proves the alleged agreement that the price of said Knight's board should go as a payment on the advance he had made for the children of Margaret Bright, deceased, in the payment of the Peers decree.

It is alleged in the bill that said sale took place in 1881, and this fact is proven by the deposition of Jesse Bright; and .Thomas Pare in his deposition says James Knight boarded with the plaintiff Jennie Bright from April, 1881, to February or March, 1882; and Jesse Bright states in his deposition that he boarded there about twelve months; so that according to the plaintiffs' allegations and proofs, a considerable, if not the greater, portion of said account for board accrued subsequent to said sale. The plaintiffs, however, allege that an execution dated the 29th day of June, 1876, in favor of Margaret Bright, and against F. H. and J. C. Ludington, for three hundred and ninety eight dollars and fifteen cents, with interest from the 15th of June, 1876, and costs, eighteen dollars and thirty five cents, was placed in the hands of said James Knight, as sheriff, which he, as sheriff, was to collect, and apply the proceeds thereof to the discharge of said Peers's judgment, and that said Knight, through negligence or favoritism to the defendants, failed to make the money on said execution. It, however, appears from the evidence in the cause that J. M. McWhorter, as attorney for Jesse Bright, administrator of Margaret Bright, subjected certain lands which said F. H. Ludington had conveyed to his son-in-law, Bierly, to the payment of said judgment, and paid the proceeds to said Jesse Bright as such administrator.

The theory upon which the plaintiffs seek to obtain relief in this cause is that the defendant, Knight, had in his hands, or should have had, money of theirs sufficient to pay for said property; and that, in pursuance of an agreement with them, he purchased said property for the children and heirs at law of the said Margaret Bright, deceased; and, having so purchased the same, a resulting trust was thereby created in their favor; and they

pray that said Knight may be compelled to make a settlement with the plaintiffs, and make to them a deed for the land; and, in order to show that he has been fully paid for the advances he made to purchase said land, they pray that the cause may be referred to a commissioner to take an account between the parties.

In the case of *Shaffer* v. *Fetty*, 30 W. Va. 248 (4 S. E. Rep. 278, 104) this Court held:

"A resulting trust, arising from the payment by a stranger of the whole or a part of the purchase-money of land conveyed to another, is a claim to the whole or a definite portion of the land, corresponding to the portion of the purchase-money paid by such stranger, and not a lien upon the land for the sum of money paid by such stranger as a part of the purchase-money.

"In such a suit, the bill may be demurred to if it fails to state what portion of the entire purchase-money of the land was paid by the plaintiff, who is seeking to set up such resulting trust."

GREEN, J., in delivering the opinion of the Court in that case, says, on page 258, 30 W. Va. (page 283, 4 S. E. Rep.):

"The whole doctrine of resulting trusts arising from the payment or part payment of the purchase-money has been abrogated in some few of the states by statute, but not in this state. But it is admitted that this doctrine of resulting trust, arising from the payment of the whole or part of the purchase-money by a person other than the grantor, should be acted on with great caution, and the circumstances from which a trust is to be raised must be clearly proven (*Faringer* v. *Ramsay*, 4 Md. Ch'y 33) and the payment or advance of the purchase-money must be made before or at the time of the purchase, and a subsequent payment will not, by relation, attach a trust to the original purchaser (see *Nixon's Appeal*, 63 Pa. St. 279) for the trust arises from the fact that the money of the real, and not the nominal, purchaser formed at the time the consideration of the purchase, and thus became converted into land in view of a court of equity. See *Botsford* v. *Burr*, 2 Johns. Ch'y 405, 414; *Steere* v. *Steere*, 5 Johns. Ch'y 1, 19, 20."

So in the case of *Miller* v. *Blose's Ex'r*, 30 Gratt. 745 ; the court held: "1. Where the trust does not arise on the face of the deed, but is raised upon the payment of the purchase-money, which creates a trust, which is to override the deed, the proof must be very clear, and mere parol evidence ought to be received with great caution."

"2. A resulting trust must arise at the time of the execution of the conveyance, payment, or advance of the purchase-money, before or at the time of the purchase, is indispensable. A subsequent payment will not, by relation, attach a trust to the original purchase ; for the trust arises out of the circumstance that the moneys of the real, and not the nominal, purchaser formed at the time the consideration of the purchase, and became converted into land."

If we apply the principles enunciated in the cases above quoted to the facts alleged or proven in this case, we can not hold that a resulting trust has been created either in favor of the heirs at law of Margaret Bright, or in favor of the plaintiff, Jennie Bright. It appears from the allegations of the bill, and from the proof, that the defendant Knight boarded with Jennie Bright for a year ending in April, 1882 ; but no witness in the cause states what portion of said board-money remained unpaid at the time of said sale, and no witness proves any agreement on the part of said Knight to apply the same as a credit upon the amount paid by him for said Margaret Bright ; and said James Knight in his answer "denies that he ever boarded with Jennie Bright, or ever made any agreement with her, or any one in her behalf, that any board or other things should go as a credit in payment on the Peers decree, or the amount paid by him for said Margaret Bright, so that by the pleadings in the cause the burden of proving the existence of such an agreement, or the advance of money or other thing in lieu thereof at the time of the sale, devolved upon the plaintiffs."

It is true that in case of *Nease* v. *Capehart*, 8 W. Va. 95, this Court held: "When a debtor has conveyed land to a trustee to secure a debt, and afterwards another person and the debtor agree that the former shall purchase the land, and hold it as a security for the purchase-money he pays,

and accordingly the debtor acquiesces, and the other purchases the land, the.transaction constitutes a trust, which a court of equity will enforce."

But the case under consideration is very different from that. In this Margaret Bright became the purchaser of the land in controversy at a trust-sale on a credit, and the defendant, James Knight, together with said Jesse Bright and F. H. Ludington became her sureties. Said Margaret Bright failed to pay the purchase-money, and a decree was obtained subjecting said land to sale for the unpaid purchase-money, and the decree which directed said sale also provided that said sureties, or either of them, were entitled upon the payment of said purchase-money to be subrogated to the rights of George H. Peers, the plaintiff, and directed the commissioner therein appointed to sell said land at his or their request, and for his or their benefit. This gave the said Jesse Bright an ample opportunity to raise the money, if he had the ability, and to pay off the Peers debt, and have the property sold for his benefit, or for Jennie Bright, or for the heirs at law of Margaret Bright. This decree was rendered in 1875, and the sale did not take place until some time in 1881, giving him ample time to raise the money, if he had had the ability.

There is no allegation in the plaintiff's bill that said land brought less than its value, or that the plaintiffs, or any one interested as an heir at law of Margaret Bright, were prevented from being present, and bidding on the property, by the representations of the defendant Knight, or that they, or any one of them, are ready and willing to repay him the amount he paid for said land; but they rest their case, and rely merely on the allegation that .at said sale, made in 1881, said land was bought in for the children and heirs at law of said Margaret Bright, deceased, by said Knight, with the agreement that the price of his board should go as a payment on the advance he had made for the children of Margaret Bright, deceased, in the payment of the Peers decree; and both the allegation aforesaid and the evidence show that said advance or payment had been made before the boarding was furnished.

In the case of *Jackman* v. *Ringland*, 4 Watts & S. 149 (a

state in which the seventh section of the statute of frauds had been omitted as in our State) I think the law is correctly propounded. Justice ROGERS, in delivering the opinion of the court, said:

"That parol evidence may be received to establish a trust has been repeatedly ruled, but the question is, what is a trust which comes within the principle? It is confined, as I take it, to those cases of resulting trusts which arise from an implication of law, as, for example, where the money is paid by one, the property purchased, and the title taken in the name of another. In such and similar cases, the legal title is in one, the equitable title in another, and, to prevent fraud, the fact of payment may be established by parol evidence; equity will decree the purchaser a trustee for the use of the person who paid the purchase-money. But where there is nothing more in the transaction than is implied from the violation of a parol agreement, equity will not decree the purchaser a trustee. See *Robertson* v. *Robertson*, 9 Watts (Pa.) 32; *Haines* v. *O'Connor*, 10 Watts 313; *Kisler* v. *Kisler*, 2 Watts 323; *Fox* v. *Heffner*, 1 Watts & S. 372. In the case of *Dyer* v. *Dyer*, reported in 1 White & T. Lead. Cas. Eq. p't 1, p. 354, notes, it was held "that a grant can not be affected with an oral trust for a third person merely on the ground of contract, nor unless the evidence goes far enough to establish fraud."

This, however, is still an open question in this State, and, as we regard it, unnecessary to be decided in this case. There seems to be little conflict among the authorities upon this proposition, that where the statute of frauds does not apply, and a trust of land is permitted to be established by parol evidence, to establish such trust the facts must be alleged and the evidence to support them must be full, clear, and satisfactory. See *Snavely* v. *Pickle*, 29 Gratt. 31; *Phelps* v. *Seely*, 22 Gratt. 573.

In the case of *Bier* v. *Smith*, 25 W. Va. 837, this Court held that the allegations and the proof must correspond, and a decree based on a different case from that stated therein will be reversed (see *McFarland* v. *Dilly*, 5 W. Va. 135; *Baugher* v. *Eichelberger*, 11 W. Va. 217; *Floyd* v. *Jones*, 19 W. Va. 359); and the plaintiffs in this case hav-

ing alleged that the defendant, Knight, bought said property in for the children and heirs at law of Margaret Bright, deceased, who are alleged in the bill to be Jennie Bright, Helen E. Bright, John B. Bright, Frank Bright, Abe Bright, Jesse Bright, Julia, wife of W. N. Curry, Maggie, wife of W. P. Stalnaker, Katie, wife of T. H. Pare, and Thomas Bright, and Samuel C. Bright; and the only proof in regard to the matter being found in the deposition of Jesse Bright, who when asked the question, "Tell whether or no there was any agreement between Mr. Knight and yourself as to the purchase of this property at that sale, whereby Mr. Knight was to bid off the property and hold it in trust for Jennie Bright, subject to his lien for whatever he might advance on the whole purchase," answered, "It was certainly the understanding between me and Mr. Knight that he was to bid in the property for Jennie Bright"—it could hardly be contended that this proof corresponded with the plaintiffs' allegation that the property was purchased by said Knight under an agreement so to do for the above-named heirs at law of Margaret Bright, and certainly said bill could not be sustained on such proof.

The plaintiffs file an amended bill, in which they claim that since their original bill was filed they have ascertained that the two acres of land on which their house is located was dropped from the land-books in 1851, and has never been entered thereon since, unless it was included in the Peers lot, and, if it was intended to be included in the said lot, that no title passed for said two-acre lot, for no title had ever been vested in the grantor, and they, by entering on said lot, improving and paying taxes on the same, acquired title thereto against all claimants whatever. This claim is diametrically opposed to the one they assert in their original bill, in which they claim under Peers and Margaret Bright, and in the amended bill against them. The evidence, however, shows that on the 13th day of May, 1858, Ophelia Cary conveyed to M. V. Peers the ten acres of land upon which he then lived, and, so far as appears, continued to live until purchased by Margaret Bright; and, if there was a forfeiture of any superior title, it would inure to the benefit of Peers and those claiming under him.

They raise a question as to the boundary, but as they all claim under Peers, and he appears to have had possession under a deed calling for ten acres since his purchase in 1858, a court of equity will not settle the title and boundaries of land, when the plaintiff has no equity against the party who is holding the land. See *Cresap* v. *Kemble*, 26 W. Va. 603. See, also, *Hill* v. *Proctor*, 10 W. Va. 59, where this Court held that "the existence of a controverted boundary does not constitute a sufficient ground for the interposition of courts of equity to ascertain and fix that boundary. It is necessary, to maintain such a bill, that some peculiar equity should be superinduced. There must be some equitable ground attaching itself to the controversy."

For these reasons I am of opinion that there is no error in the decree complained of, and the same is affirmed, with costs and damages against the appellants.

AFFIRMED.