# REPORTS OF DECISIONS

## OF THE·

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

### CHARLESTON.

R. H. FREER *et al. v.* THOMAS E. DAVIS *et al.*

Submitted January 30, 1902.    Decided November 22, 1902.

1. EQUITY—*Jurisdiction*—*Adverse claimants.*

   A court of equity has no jurisdiction to settle the title and boundary of lands between adverse claimants, when the plaintiff has no equity against the party claiming adversely to him. In so far as point one of the syllabus in *Bettman* v. *Harness*, 42 W. Va. 433, conflicts with this proposition, the same is disapproved. (p. 6).

2. INJUNCTION—*Hostile Title.*

   Where irreparable mischief is being done or threatened to real estate, going to the destruction of the substance of the estate, such as the extraction of oil and gas, and the title to the land is in dispute, the parties claiming under hostile titles, a court of equity will enjoin the trespass and preserve the property and rights of the parties, pending the determination, in a court of law, of the question of title; and this although no action at law has been instituted, if it appears from the bill that the complainant intends immediately to put the question of title into a course of judicial determination and prosecute it diligently. (p. 9).

| | |
|---|---|
| 52 | 1 |
| 52 | 232 |
| 52 | 251 |
| 52 | 317 |
| 52 | 1 |
| 53 | 216 |
| 53 | 414 |
| 52 | 1 |
| o54 | 19 |
| o54 | 20 |
| 54 | 249 |
| f54 | 334 |
| o54 | 489 |
| f54 | 563 |
| ·52 | 1 |
| f55 | 656 |
| 52 | 1 |
| d56 | 340 |
| 56 | 413 |
| e56 | 414 |
| 57 | 278 |
| 52 | 1 |
| 58 | 379 |
| 52 | 1 |
| 60 | 58 |
| e 60 | 688 |
| 52 | 1 |
| f61 | 83 |
| 52 | 1 |
| f62 | 103 |
| 62 | 363 |
| 62 | 523 |
| 63 | 323 |
| 52 | 1 |
| 65 | 537 |
| f65 | 752 |

3. JURISDICTION—*Estoppel.*

> As consent cannot confer jurisdiction, a plaintiff upon whose
> bill there is a final decree and adjudication against him, upon
> matters set up in the bill, is not estopped to assert, upon ap-
> peal, that the court to which he resorted had no jurisdiction
> of the subject matter. (p. 12).

4. REVERSAL—*Cost.*

> In such case, although' the decree will be reversed at the in-
> stance of the plaintiff, the costs in the appellate court will be
> awarded against him. (p. 16).

Appeal from Circuit Court, Ritchie County.

Bill by R. H. Freer and others against Thomas E. Davis and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

EDWIN MAXWELL, THOMAS E. DAVIS, C. W. LYNCH, MR. HORNER, and HOMER ADAMS, for appellants.

V. B. ARCHER, SHERMAN ROBINSON, and WM. BEARD, for appellees.

POFFENBARGER, JUDGE:

This is a suit in equity brought by R. H. Freer and others against Thomas E. Davis and others in the circuit court of Ritchie County for the purpose of recovering the title and pos-session of a tract of real estate containing about fifty-eight acres. As ground of equitable jurisdiction, it is shown that W. J. Shields, one of the plaintiffs under whom all the others claim, had been in possession of the land claiming under cer-tain deeds, and those under whom he claimed had taken some timber off of it and he had cultivated a small portion of the land in oats one year. Plaintiffs had also sent a man on the land to get out timber for an oil derrick. While he was so engaged, some of the defendants came upon the land and notified him that they claimed it, threatened to have him arrested for tres-passing, and finally told him that if he did not leave the land they would put him off by force, and then he went. Thereafter, the defendants and their agents took possession of the land and began the work of developing it for oil and gas. They erected a derrick on the land very near the line but, after notice from

the plaintiffs, they moved it just over the line but their engine house seems to have been left on the land. The bill further alleges that the defendants had entered into and upon said premises and were erecting a derrick and rig thereon preparatory to drilling and operating the premises for oil and gas and were about to bore for, and take from said premises, oil and gas. It was further shown that other wells had been drilled on adjacent lands and so near as to drain the premises in question of the oil. The prayer of the bill was that the defendants and each of them, their agents, etc., might be enjoined and restrained from erecting derricks or other machinery on the land and from removing oil and gas therefrom, and that a receiver be appointed to take charge of the premises and operate the same under the direction of the court.

It is alleged in the bill that in the year 188— the land had been reported to the commissioner of school lands as thirty acres of waste and unappropriated land, and upon survey it was found to contain fifty-eight acres. The commissioner brought a suit to sell the land and, under a decree dated October 28, 1885, it was sold on February 15, 1886, to C. H. Gibboney and the sale was confirmed and a deed made to him on the 24th day of February, 1886. Gibboney conveyed a portion of it to C. L. Latoriere and Latoriere conveyed a portion to W. J. Shields. Latoriere then conveyed on December 9, 1892, the balance of his interest to C. H. Gibboney. This portion seems to have been twenty-eight acres and it was sold for non-payment of taxes for the years 1893 and 1894 and Shields purchased it, and W. R. Meservie, clerk of the county court of said county, conveyed it to him by deed dated April 6, 1898. Thus Shields became the owner of all of it and from him, directly or indirectly, the other plaintiffs derive their title and interest by conveyances and a lease for oil and gas purposes.

The defendants deduce their title as follows, as appears from the answer of Edwin Maxwell, Trustee: Isaac Cox and John Ramsey, assignees of Thomas Proctor, were the patentees of ten thousand acres of land under a patent from the Commonwealth of Virginia, dated March 20, 1786. This land was forfeited for non-payment of taxes and, under a decree of the circuit superior court of Wood County, made at the April term, 1841, it was sold. Before sale, however, it was divided into lots and lot

No. 1, containing one thousand, nine hundred and forty-nine and one-half acres was conveyed to Cyrus Ross by Commissioners P. G. VanWinkle and M. Chapman. Ross died in 1872 and, for the purpose of settling his estate, the land was conveyed to Edwin Maxwell and John I. Rogers, trustees. They conveyed to certain of the Ross heirs something over thirteen hundred acres, estimated to be worth ten thousand dollars, in part satisfaction of twelve thousand dollars which it was agreed that they should have out of the estate. Whatever land remained after this transaction, stood in the name of Rogers and Maxwell, trustees. Rogers having died, it stands in the name of Edwin Maxwell, surviving trustee. Claiming that the land in controversy belongs to the Ross estate, and denying that the heirs of said estate have ever been out of possession of it, Maxwell, trustee, leased it to his co-defendants for the purpose of oil and gas development. The defendants insist, and have taken much evidence to prove, that the land is within the one thousand, nine hundred and forty-nine and one-half acre survey and that the representatives of the Ross estate have never, in any way, relinquished their claim to it nor admitted that it was waste and unappropriated land. They also claim to have paid the taxes on it. On the other hand, it is insisted by the plaintiffs that the defendants have never asserted any claim to it nor exercised any dominion over it.

From this statement it is clear that the plaintiffs on the one hand, and the defendants on the other, are claiming under adverse and hostile titles and that there is no equity or privity of any kind existing between them. In other words, the object of the bill is to recover the possession and title of the tract of land, which is admitted to be in the possession of the defendants. It is urged here that the case of *Bettman* v. *Harness,* 42 W. Va. 433, is authority for a proceeding of this kind, and it is boldly stated that there is jurisdiction in equity for this purpose. But the *Bettman-Harness Case* involves a far different state of facts. That was a contest primarily between lessees, claiming under different leases made by the same lessor. It involved nothing more than the right of taking the oil. The title to no real estate was involved except in so far as the oil itself was real estate. Harness had leased to Watson who had assigned the lease to Bettman. Afterwards, Harness leased the

same land to Finnigan who entered upon the land and began boring a well. Then Bettman brought a suit in equity and enjoined Finnigan from operations under the second lease, making Harness a party to the bill. That case did not involve the settlement of hostile titles as this one does. By construing the lease or contract between Harness and Bettman it was found that it had expired and that Bettman had no title nor shadow of claim to the oil. The construction of that contract was a matter for the court and not for the determination of a jury. Here, we have questions of boundary and location and possession and numerous other matters of fact which make the case one for trial by jury. Moreover, in the *Bettman-Harness Case* while the title to the oil may be said to have been involved, yet at the time the injunction was awarded no oil had been discovered and the matter actually involved was a mere right of exploration which might or might not result in the finding of oil. The title to the land was in Harness and wholly, undisputed. The only question was, which lease gave the right to explore and take the oil. Here, the title to the oil depends upon the title to the land and that is in dispute. The defendants are in possession and the plaintiffs are out. "Equity has no jurisdiction, upon the sole ground of removal of cloud from title, to try conflicting titles to lands, at the suit of one holding either legal or equitable title, the adverse claimant being in actual possession." *Davis* v. *Settle,* 43 W. Va. 17. That was ι. suit for partition, and in such suit equity has jurisdiction to pass on questions of law touching the legal title of one claiming to share in the partition and the interest he claims, if his interest be such as, if valid, will make him a co-owner in the common subject with the plaintiff as holding under the same right or title under which the partition is to be made. But it is held in that case that the court is not authorized in such suit to pass on the title of a stranger claiming under a different title, adverse to the title under which the partition is to be made. It is further there held that, "In matters of such nature as give right to trial by jury under the Constitution, the· legislature cannot give equity jurisdiction over them, and deprive the party of right of trial by jury against his protest." In *Miller* v. *Morrison,* 47 W. Va. 664, this question is discussed and the doctrine of *Davis* v. *Settle* approved. See also *Cresap* v. *Kemble,*

26 W. Va. 603; *Bright* v. *Knight,* 35 W. Va. 40. "A court of equity has no jurisdiction to settle the title and bounds of lands between adverse claimants, unless the plaintiff has some equity against the party claiming adversely to him." *Lange* v. *Jones,* 5 Leigh 192.

There is but one general proposition laid down in the books upon which it can be contended that, in a case like this, a court of equity may try and determine the question of title. That is the familiar maxim that, when a court of equity has taken jurisdiction for one purpose, it will go on and do complete justice between the parties, even to the extent of determining legal rights. But this principle is not of universal application, even if it be conceded that jurisdiction, as here used, includes jurisdiction by injunction to restrain a trespass, which is doubtful, to say the least, inasmuch as the law writers term it mere ancillary jurisdiction. Story's Eq. Jur., s. 862; Pomeroy's Eq. Jur. 171. This maxim and principle seems to have grown out of the equitable jurisdiction for purposes of discovery, as will be seen from an examination of ss. 64k to 74 of Story's Eq. Jur. In s. 64k, it is said, "In many cases it has been held, that, where a party has a just title to come into equity for a discovery, and obtains it, the court will go on, and give him the proper relief; and not turn him round to the expenses and inconveniences of a double suit at law. The jurisdiction having once rightfully attached, it shall be deemed effectual for the purposes of complete relief." Discovery seems to be the basis of this whole doctrine. Where the bill is for both discovery and relief, the discovery, to give jurisdiction, must be necessary. That being true, the primary or main purpose of the bill is the assertion of an equitable right. The most familiar instances of the determination by courts of equity of legal rights, after having taken jurisdiction upon some equitable ground, are cases of fraud, accident, mistake and account, all of which, under certain circumstances, are matters of concurrent jurisdiction, and, in almost every instance of that kind, discovery is necessary to the doing of complete justice. Mr. Story concludes his discussion of the subject by saying, at s. 73, "In the present state of the authorities, however, little more can be absolutely affirmed, than these propositions; first, that in bills of discovery, seeking relief, if any part of the relief sought be of an

equitable nature, the court will retain the bill for complete relief; secondly, that in matters of account, fraud, mistake, and accident, the jurisdiction for relief will, generally, but not universally, be retained and favored; and thirdly, that in cases, where the remedy at law is more appropriate than the remedy in equity, or the verdict of a jury is indispensable to the relief sought, the jurisdiction will either be declined, or, if retained, will be so, subject to a trial at law." At s. 72, this author further says, "This doctrine, however, though generally true, is not to be deemed of universal application. To justify a court of equity in granting relief, as consequent upon discovery, in cases of this sort, it seems necessary, that the relief should be of such a nature as a court of equity may properly grant in the ordinary exercise of its authority. If, therefore, the proper relief be by an award of damages, which can alone be ascertained by a jury, there may be a strong reason for declining the exercise of the jurisdiction, since it is the appropriate function of a court of law to superintend such trials. And, in many other cases where a question arises, purely of matters of fact, fit to be tried by a jury, and the relief is dependent upon that question, there is equal reason that the jurisdiction for relief should be altogether declined; or at all events, that if the bill is retained, a trial at law should be directed by the court and relief granted, or withheld, according to the final issue of the trial."

From this it is apparent that, even when equity jurisdiction attaches for the purpose of discovery, there are exceptions to the rule that the court will go on and determine all questions in the cause, without regard to whether they be legal or equitable. And the decisive test seems to be the necessity of a trial by jury of disputed questions of fact necessary to the ascertainment of the legal right involved. As discovery belongs to the general jurisdiction of equity, and the jurisdiction by injunction is rather special in its nature and scope, it would be unreasonable to say that, while the presentation of the necessity of a trial by jury will stop the progress of the cause when jurisdiction rests upon discovery, but will not do so when jurisdiction attaches because of the necessity of interference by injunction to prevent irreparable injury, pending a determination of the primary right involved. There are cases in which

it is said that, although the only equitable ground of jurisdiction was the necessity of the exercise of the restraining power of the court by injunction, equity went on and passed upon the legal rights of the litigants, but in every instance the case was one of accident, fraud, mistake, or account, belonging to the general concurrent jurisdiction of equity, and, in no case, has any court proceeded so far as to hold that, having taken jurisdiction to restrain a trespass to real estate, it would go on and determine the legal title to the land when that was in dispute and a trial by jury was necessary by reason of controverted matters of fact, such as possession, boundary and location. On the other hand, there is an abundance of authority holidng the contrary doctrine. The only case in which the proposition is asserted is that of *Bellman* v. *Harness*, 42 W. Va. 433. In the first point of the syllabus of that case it is asserted, but it undoubtedly occurred by inadvertence. The decision of that question in that case was wholly unnecessary. As has been shown, there was no question of title in that case to be decided, nor any necessity for a trial by jury.

Turning now to another line of investigation, it is found that, until recent years, courts of equity would not restrain a trespass of any kind upon real estate in any case wherein it appeared from the pleadings that there was controversy about the title to the land. Such controversy immediately put the case out of the court, for the reason that it belonged to the jurisdiction of the law courts. In *Erhardt* v. *Boaro*, 113 U. S. 537, Mr. Justice Field says that Lord Eldon is reported in *Pillsworth* v. *Hopton*, 6 Ves. 51, to have said in 1801 that he remembered being told in early life from the bench, "that if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of the court as to the injunction." Waste is in the nature of a trespass, it being an injury to real estate, but it is always committed by a tenant or some person whose estate or interest in the land is in privity with that of the complaining party, and courts of equity have always interposed by injunction to prevent it. In such case, there is no dispute about the title. The jurisdiction to prevent trespass to real estate by a stranger or person claiming to hold an adverse title finally grew out of the jurisdiction to prevent

waste, trespass and waste both being injuries to the freehold and differing only in respect to the title of the person doing the injury. 10 Am. & Eng. Enc. Law, 876; High on Inj. 730.

The ancient rule of non-interference by courts of equity with trespass to real estate, the title to which is in dispute, has been relaxed, but to what extent? Only to the extent that courts of equity, when the injury is such as tends to the destruction of the property and is, therefore, irreparable, and justice requires that the act of trespass be prevented until the title can be determined in a court of law, will so prevent it by injunction. That is the limit set by the authorities.

In *Erhardt* v. *Boaro*, cited, Mr. Justice Field, speaking of the old rule, says: "This doctrine has been greatly modified in modern times and it is now of common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation. The authority of the court is exercised in such cases, through its preventive writ, to preserve the property from destruction pending legal proceedings for the determination of the title." High on Inj., s. 732, says, "The jurisdiction in restraint of trespass to mines is not an original jurisdiction of equity, under which the court would be justified in trying the title to the mines themselves, and the party aggrieved must, therefore, first establish his title at law, or show satisfactory reason for not doing so." 10 Am. & Eng. Enc. Law, 880, says: "If the title of the plaintiff is in dispute, an injunction will not be granted previous to the determination of the legal rights of the parties unless the act about to be committed by the defendant is of such a nature that, should the right to commit it be decided against him, the consequences of its commission would be irreparable." Spelling on Inj. etc., s. 20, says: "To justify granting a preliminary injunction, the plaintiff's right must be certain as to the law and the facts." In s. 21, the same book says: "It follows as corallary to the leading proposition of the preceding section that where plaintiff seeks equitable relief by way of injunction in aid of the legal right, the court will not, unless such right is clear,

declare the legal right, and grant a perpetual injunction founded on such declaration, but will require the question to be tried at law." The same author says, at s. 333, under the head of Protection of Riparian and Water Rights, "In these, as in other cases, courts of equity will refuse to assume jurisdiction to try and determine legal questions which are controverted." At s. 181, he says, "Upon an application for an injunction affecting the title to real estate, the proper office of the court is not to ascertain the legal existence of a right, but solely to protect the property until that right can be determined by the tribunal to which it properly belongs." This was no doubt taken from the opinion of Lord Chancellor Cottonham, in *Harmon* v. *Jones,* 1 Craig & Ph. 301, where it is further said, "It is a fundamental error in an order of this kind to assume finally to dispose of legal rights and not to confine itself to protecting the property pending the adjudication of those rights by a court of law. I can sustain the injunction only upon the terms of its being accompanied by some provision for putting the question immediately into a course of legal investigation." This is quoted and approved in *Clayton* v. *Shoemaker,* 67 Md. 216. A leading case is that of *Irwin* v. *Davidson,* 3 Ired. Eq. (N. C.) 311, in which it is held that, "When the plaintiff, seeking an injunction in such cases, (mines, timber and the like), claims to be the legal owner, he must show that he has established his legal title by the judgment of a court of law; or, that he is prosecuting his suit at law, and the injury, which he will sustain by the acts of the defendant before he can obtain judgment, will be irreparable, and in the latter case, the court, in continuing the injunction, must make such order as will ensure the speedy determination of the suit at law.".

The rule, as laid down by this Court in numerous cases, is, that, to warrant the interference of a court of equity to restrain a trespass on land, two conditions must co-exist: First, the plaintiff's title must be undisputed, or established by legal adjudication; and, secondly, the injury complained of must be irreparable in its nature, unless there exist other grounds of equity. *Cox* v. *Douglass,* 20 W. Va. 175; *Schoonover* v. *Bright,* 24 W. Va. 698; *Watson* v. *Ferrell,* 34 W. Va. 406; *Becker* v. *McGraw,* 48 W. Va. 539. This Court has also held in

the following cases that the existence of a controversy as to
title excludes the jurisdiction of a court of equity to enjoin
trespass to real estate: *Cox* v. *Douglass,* 20 W. Va. 175; *Kem-*
*ble* v. *Cresap,* 26 W. Va. 603; *Watson* v. *Ferrell,* 34 W. Va. 406;
*Becker* v. *McGraw,* 48 W. Va. 539.   To the same effect is *Lange*
v. *Jones,* 5 Leigh 192.

While this Court has not thus far recognized the modern
practice of preventing irreparable injury by trespass, pending
settlement of title to the land in a court of law, the great
weight of authority, both English and American, is in favor of
that jurisdiction.   No reason is perceived why it should not be
exercised in this State as well as elsewhere.   It is both just
and reasonable.   Great injury may result, and in most cases
would necessarily result, from turning the plaintiff away and
refusing him any aid.   This is especially true where the tres-
pass consists of taking timber or minerals.   Actions of eject-
ment, as a rule, proceed slowly and the subject matter of the
litigation would be, in many cases, virtually destroyed before
a decision could be had, if the trespass were not restrained and
the property thereby preserved during the pendency of the
suit.   Most of the cases in which the subject matter has been
thus impounded and protected during the litigation show that
actions of ejectment had been brought and were pending.   But
the reason underlying the proceeding does not require the pen-
dency of such suit.   Every good purpose is subserved, if the
plaintiff shows his claim of title, the imminency of irreparable
injury and his intention to immediately put the question of
title into a course of legal investigation and determination by an
action of ejectment.   Some of the cases so hold.   *Gause* v.
*Perkins,* 56 N. C. 177, (69 Am. Dec. 728); *Harmon* v. *Jones,*
1 Craig & Ph. 301.   Other cases bearing on the question are
*Griffith* v. *Hilliard,* 64 Vt. 643; *Shubrick* v. *Guerard,* 2 Du-
suass Eq. 616; *Green* v. *Keen,* 4 Md. 98; *Fulton* v. *Harmon,* 44
Md. 251; *Kinder* v. *Jones,* 17 Ves. Jr. 109; *Piper* v. *Piper,* 38
N. J. Eq. 81; *Duval* v. *Waters,* 1 Bland Ch. (Md.) 569; *John-*
*son* v. *Hall,* 83 Ga. —.

The conclusion resulting from these authorities is, that the
court had no jurisdiction to pronounce the decree of the 18th
day of May, 1901, dismissing the bill and thereby adjudicating
the question of title.   The court should have sustained the

demurrer and granted leave to the plaintiffs to amend their bill. On their failure to amend, it should have dismissed the bill without prejudice or for want of jurisdiction. This would have enabled the plaintiffs to have put themselves within the jurisdiction of the court to protect the property pending an action of ejectment to try the title.

Our consultation over this case, however, has introduced another serious question. While the court had no jurisdiction to pass upon the question of title, the error in doing so was induced by the plaintiffs themselves. They brought their suit in the wrong court. Can they now complain of the action of the court in adjudicating the cause, they having requested it? To permit them to do so has the semblance of allowing them to take advantage of their own wrong. In 3 Cyc. 242, it is said that, in general, "The appellant or plaintiff in error will not be permitted to take advantage of errors which he, himself, committed, or invoked or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct." But, in respect to jurisdiction, the same book says, at the same page, "While the authorities are in conflict, the better rule would seem to be that, as consent cannot confer jurisdiction, a plaintiff against whom judgment is rendered is not estopped to assert, upon appeal or error, that the court to which he resorted had no jurisdiction of the subject matter of the suit, or of the person of the defendant." There are a few cases which seem to oppose this latter view. *Shellenbarger* v. *Biser,* 5 Neb. 195; *Lownsbury* v. *Catron,* 8 Neb. —; *Ballong* v. *Bank,* (Neb.) 3 L. R. A. 142. But it is undoubtedly supported by the better and more numerous authorities. See *Welden* v. *Riley,* 23 Conn. 172, where it is held to be immaterial how the want of jurisdiction is brought to the notice of the court. *Western Union Telegraph Co.* v. *Taylor,* 4 Ga. 408; *Bell* v. *Fladd,* 28 S. C. 313; *Capron* v. *Van Noorden,* 2 Cranch 126; *United States* v. *Huckabee,* 16 Wall. 414. In *Railroad Company* v. *Swan,* 111 U. S. 462, it is held: "This court will, where no motion is made by either party, on its own motion, reverse a judgment for want of jurisdiction, not only in any case where it is shown negatively that jurisdiction does not exist, but even when it does not appear affirmatively that it does exist." Mr. Justice Matthews delivered the opinion of the

court in that case and in it he reviews numerous decisions of the court bearing upon the question. The following extract is deemed to be not only applicable to the question raised here, but also fairly conclusive of it : "It is true that the plaintiffs below, against whose objection the error was committed, do not complain of being prejudiced by it; and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this Court, of its own motion, to deny its own jurisdiction and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this Court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested and without respect to the relation of the parties to it. This rule was adopted in *Capron* v. *Van Noorden*, 2 Cranch 126, decided in 1804, on the application of the party against whom it had been rendered in the circuit court, for want of the allegation of his own citizenship, which he ought to have made to establish the jurisdiction which he had invoked." In another place, he quotes the following from the dissenting opinion of Mr. Justice Curtis, in the *Dredd Scott Case*, 19 How. 393, concurring, however, in that part of the opinion which held that a judgment of the circuit court, upon the sufficiency of a plea in abatement denying its jurisdiction, was open for review, upon a writ of error sued out by the party in whose favor the plea had been overruled: "It is true, as a general rule, that the court will not allow a party to rely on anything as cause for reversing a judgment which was for his advantage. In this, we follow an ancient rule of the common law. But so careful was that law, of the preservation of the course of its courts, that it made an exception out of that general rule and allowed a party to assign for error that which was for his advantage, if it were a departure of the court itself from its settled course of procedure. * * * The true question is, not what

either of the parties may be allowed to do, but whether this court will affirm or reverse a judgment of the circuit court on the merits, when it appears on the record, by a plea to the jurisdiction, that it is a case to which the judicial power of the United States does not extend. The course of the court is, when no motion is made by either party, on its motion, to reverse such judgment for want of jurisdiction, not only in cases where it is shown, negatively, by a plea to the jurisdiction, that jurisdiction does not exist, but even when it does not appear, affirmatively, that it does exist."

Nor will the authorities bear out the suggestion that, as the question is one of procedure, whether the remedy is at law or in equity, and both law and equity jurisdiction are exercised by the same court, a different rule must be applied. In *Thompson* v. *Railroad Companies,* 6 Wall. 134, the sole ground of want of jurisdiction was, that the plaintiffs had brought their suit in equity upon a legal demand, and the court reversed the decree and remanded the cause with directions to dismiss the bill without prejudice. Point 1 of the syllabus reads as follows: "Though usually where a case is not cognizable in a court of equity the objection must be interposed in the first instance, yet if a plain defect of jurisdiction apears at the hearing or on appeal, the court will not make a decree." See also *Barney* v. *Baltimore City,* 6 Wall. 280, a very similar case. These cases do not bear directly upon the question now under discussion, but they show that the question is one of jurisdiction and not one of mere procedure. While law and equity are administered by the same judge, he presides over two different forums and his court of equity is as powerless to take cognizance of an action at law as if the two courts were presided over by two different judges.

If the distinction between the functions and powers of courts of equity and courts of law is to be preserved, the same reasoning and the same principle must be applied here, or parties litigant, upon one pretext or another, are to be permitted to determine for themselves, by consent, conduct, or otherwise, the extent of the jurisdiction of courts of equity, and break down and destroy the barriers which have been set up for the purpose of separating the jurisdiction of courts of equity from the jurisdiction of courts of law. No man can tell either the extent to

which that would be done or enumerate the evils which might flow from it. By permitting it in this instance, the great constitutional right of trial by jury is obliterated. In reply to this, it may be said that, even in an action of ejectment, a jury may be waived by the parties. That is true, but, in such case, it is done deliberately and in a regular and orderly manner. Here, it is done irregularly and indirectly by the court and counsel and probably without the plaintiffs' having been apprised of the waiver. Such waiver, in a court of law, is made in a court having jurisdiction of the cause. Here, it is made indirectly in a court having no jurisdiction of the subject matter. This distinction must be borne in mind. If the plaintiff takes his cause into a proper forum, but in an irregular manner, and errors are committed against him or in his favor, by reason of his own mistakes, negligence or misconduct, he cannot complain. But it is illogical to say that the same result must follow when he erroneously takes his case into a court which has no jurisdiction of it, no power to hear and determine it. He cannot confer upon the court that power which it has not. His inability to complain of his own wrong confers no additional authority upon the court. This view is strengthened by the decisions of our own Court which holds in two cases, exactly like this one, that, "If the court has no jurisdiction, it will dismiss a bill on the hearing, although there was no demurrer to the bill." *Cresap* v. *Kemble,* 26 W. Va. 603; *Watson* v. *Ferrell,* 34 W. Va. 406. In *Railway Co.* v. *Gibbons,* 35 W. Va. 57, this Court expressly held that consent of parties cannot give jurisdiction and dismissed the bill for want of equity jurisdiction.

From these authorities it is clear that the decree of May 18, 1901, must be reversed, although the plaintiffs do not urge reversal on the ground of want of jurisdiction. They insist that the court had jurisdiction but decided erroneously against them. They complain of the decree. But it is the duty of this Court, on its own motion, to correct excess of jurisdiction on the part of the lower court. Hence, the decree of dismissal must be reversed, the demurrer to the bill sustained, leave granted to the plaintiffs to amend their bill, and the cause remanded. The discharge of the receiver and dissolution of the injunction by the final decree were proper and in these respects

only it is affirmed. An appeal was taken from an order made on the first day of December, 1900, apointing a receiver. From what has been said, that order was erroneous, but the error was corrected by the order of May 18, 1901, setting aside the order appointing the receiver.

While the plaintiffs obtain the advantage of a reversal of the decree of May 18, 1901, they are not the parties substantially prevailing within the meaning of the statute giving cost to the party so prevailing. In *Railroad* v. *Swan,* cited, which was almost exactly like this one, Mr. Justice Matthews said: "In the present case, the writ of error is not dismissed for want of jurisdiction in this Court; on the contrary, the jurisdiction of the Court is exercised in reversing the judgment for want of jurisdiction in the circuit court; and although, in a formal and nominal sense, the plaintiffs in error prevail in obtaining a reversal of a judgment against them, the cause of that reversal is their own fault in invoking a jurisdiction to which they had no right to resort, and its effect is, to defeat the entire proceeding which they originated and have prosecuted. In a true and proper sense, the plaintiffs in error are the losing and not the prevailing party and, this Court having jurisdiction upon their writ of error so to determine, and in that determination being compelled to reverse the judgment, of which, on other grounds, they complain, although denying their right to be heard for that purpose, has jurisdiction, also, in order to give effect to its judgment upon the whole case against them, to do what justice and right seem to require, by awarding judgment against them for the costs that have accrued in this Court." See also *Assessor* v. *Osborn,* 9 Wall. 567; *Montalet* v. *Murray,* 4 Cranch 46; *Burham* v. *Rangeley,* 2 Wood & M. 417.

Hence, although the decree is reversed at the instance of the plaintiffs, the costs in this Court must be decreed against them.

*Reversed and Remanded.*

BRANNON, JUDGE, (*dissenting*):

The question of jurisdiction in equity in this case is difficult. There can be no question but that at least for a temporary injunction there was jurisdiction to restrain irreparable injury; but the court went on to decree fully on the merits of two con-

flicting titles to land, and did not direct an action at law or insert in the decree a reservation of right to sue at law. There is a rule that equity will not try conflicting titles to land, unless the plaintiff has some equity against the party claiming adversely; but where it has jurisdiction to enjoin irreparable damage, can it decree in full? Does *Bettman* v. *Harness,* 32 W. Va. 433, go too far in saying that having jurisdiction for injunction, equity will give full relief, though in so doing it has to pass on adverse titles? The perplexing question thus comes —will the Court make the injunction temporary or provisional; that is, retain the cause and direct the plaintiff, if not in possession, to bring an action at law to try the title, or the defendant to do so, if not in possession, and upon the result, either dissolve or perpetuate the injunction? Or having jurisdiction for an injunction, will it decide upon the conflicting titles? For the proposition that when equity has lawful jurisdiction for one purpose, it will hear the case upon all matters and give full and final relief, though in doing so it becomes necessary to pass on legal rights and establish legal rights, properly triable at law, there is a world of authority. Hoggs Eq. 470; 1 Barton's Ch. Pr. 59; 1 Pom. Eq. ss. 181, 231; *Sinnett* v. *Cralle,* 4 W. Va. 600; *Hotchkiss* v. *Fitzgerald,* 41 *Id.* 357; *Evans* v. *Kelly,* 49 *Id.* 181; *Welters* v. *Farmers Bank,* 76 Va. 12. Does the fact that an injunction is awarded in a contest between two hostile titles to land bring the case under the above rule, and authorize the Court to adjudicate the whole case? "Wherever equity has jurisdiction to grant an injunction for some special purpose, even though the injunction covers only a portion of the controversy, it may go on and decide all the issues and make a final decree." 1 Pom. Eq. s. 236. Of course, this rule does not apply where the matter is already in a law court, and equity is called upon only to enjoin damage pending that suit, because there the equity function is only ancillary and the law court had first taken jurisdiction. Thus, we see much authority, under which we could plausibly assert the power of equity to decree in full. Against this position, it will be said that thus a man claiming land would be deprived of right of trial by jury; but the same may be said in many other cases. In the case of an injunction to stay trespass doing irreparable damage where adverse titles are involved an

exception to the rule that equity having jurisdiction for one purpose will go on? There is much authority to say that when equity takes jurisdiction for an injunction in a controversy not otherwise within its jurisdiction, but cognizable at law, it will only entertain that injunction until a suit can be brought and tried in a law forum. It will grant the injunction though title to land is contested, but only a provisional one under this rule. Under this rule, when the answer comes in and denies title and sets up an adverse title, and the right to the place, or to do the act complained of, is doubtful, that stops the equity wheels until a trial at law shall settle the right. *Irwin* v. *Dixon,* 9 How. 28; Waterman on Trespass, Vol. 2, s. 1129; 1 Story Eq. s. 62; 1 Spell. Injunctions, s. 367; *Manchester Mill* v. *Town,* 25 Grat. 825. It is perplexing to say which of these rules shall prevail. At one time, equity would not under any circumstances enjoin trespass to real estate where the right was in contest between hostile titles; but long ago that rule has vanished and given way to the rule that injunction will be granted against irreparable damage; and I concluded that equity having thus taken jurisdiction, would decide all matters necessary to final decree. I thought the change of the rule would carry this result to say whether an act is a wrongful trespass, involves the question of which of the parties has the better title, and this is the test of the propriety of the first step by injunction, as well as the last. Does not this bring it under the law found in 12 Ency. Pl. & Pr. 164? "In order that a court of equity may act under the rule of retaining jurisdiction for full relief, the subject to be adjudicated must be something incidental to the cause of action, which originally gave the court jurisdiction, or so closely connected therewith as to render its determination necessary to the final decision of the whole controversy between the parties."

But, we do not find it indispensable to decide this question of the right of equity to retain jurisdiction for full relief as to cases generally, because in this particular case we may say that the circuit court did not err, as against the plaintiffs, in decreeing against them on the whole of the case, and for the following reasons: The plaintiffs chose the equity court for full relief, not merely for injunction until title could be tried at law. They set up their title in the bill and say that the defend-

ants claim under another title from the Ross heirs, and say that that title is bad and their own good, and place the two titles before the court for adjudication, and ask that the defendants be enjoined because their title is bad, and that of the plaintiffs good, and pray that title be vested in them by decree of the court. This could only be done by decree on the merits. Now, if the decree had been against the defendants, they could raise this question of jurisdiction; but the case is different with the plaintiffs. They cannot choose the equity court, resist the demurrer of the defendants raising the question of jurisdiction, have that demurrer overruled and thus ask the court to go on, and have the benefit of their position thus taken by having the court to give them the benefit of jurisdiction for full hearing and compel the defendants to fight them throughout, and then, when the decree is against them, take the inconsistent position that the court had no jurisdiction, but after hearing the case on its merits should have reserved right to compel the defendants to go through another suit in a court of law on the very same facts. Plaintiffs had the benefit of the suit to try the title to the prejudice of the defendants in time and costs. The Supreme Court of the United States says in *Davis* v. *Wakelee,* 156 U. S. 680: "Where a party assumes a certain position in a legal proceeding and succeeds in maintaining it, he cannot thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." "Whenever a party seeks the aid of a court of justice to enforce his rights, and submits his case and objections to the decision of a court, and invites it to decide upon them, and makes no objection to the jurisdiction till after the court has heard and adjudicated, he is estopped from subsequently objecting to its decision, and the proceedings taken thereon." To same effect Val Fleets Collat. Attack. s. 860.

Would it not prejudice the defendants to make them fight over again, the same thing on the same facts in another suit. In *Town* v. *Ralston,* on page 186 of 48 W. Va., will be found authorities pertinent to the subject of taking inconsistent positions in judicial proceeding. Also 11 Am. & Eng. Ency. L. 2d Ed. 446. In Biglow on Estoppel, 687, is found the broad proposition that "one who without mistake induced by the op-

posite party, has taken a particular position deliberatly in the course of litigation, must act consistently with it." In *Ellis* v. *White,* 61 Ia. 644, one who procured a divorce with its benefit could not afterwards say that the court had no jurisdiction. But it may be said that such is the law only where the record is attacked collaterally; but that answer is not good; for I do not say that the record here, of its own force operates as an estoppel by record. I am not talking about estoppel by record. I do not appeal to this record as such.; but I say that there is an estoppel by conduct, one *in pias.*

Therefore the principle of the law above stated, applies. It will be said that consent cannot give jurisdiction. I do not think that rule applies in this instance. The circuit court had jurisdiction on its law side to try title. The plaintiffs simply chose the wrong side of the court to try title. And equity has often jurisdiction to try land titles, as incidental to relief, and shall we go so far as to say that the parties could not waive this objection of jurisdiction? They did waive it by bringing their suit in equity. The books say that if the title is not doubtful, equity has power to decree without a trial at law, and only where title is in doubt, is such law trial proper. A fine-spun distinction; but it shows that equity has jurisdiction in cases of like general nature (*ejusdem generis*), and decreeing in full at most mere error of procedure, not nullity, as the case of a court not having jurisdiction under any circumstances. The court has jurisdiction of cases of that general nature, but not of the particular case under the facts. This shows that a party may be bound by his choice of the equity court. If parties are in an equity court upon what is a law demand, can they not agree that the court go on and hear the case? Parties can waive a jury trial in a law court. If they consent to waive a jury trial by bringing their suit in a court of equity and submit their case to it, do they not effectually waive a jury right? Conflicting land title gives a jury right, I concede; but parties can waive it in that case, as well as in others. In *St. Lawrence Co.* v. *Holt,* 41 S. E. 351, we held that when a court of equity decreed in a case proper for a suit at law, the decree is not a nullity.

This shows that if the court erred in this case, in decréeing in full, it was mere error, and that a party may waive mere

error, though he cannot consent to jurisdiction in a court, which under no circumstances could act. In short, where equity is asked to enjoin irreparable injury, all concede that it has jurisdiction for one thing, that is injunction, and if the title is free of doubt, it has jurisdiction to decree in full; and if it mistakes and decree where it should direct a law action, it is only error, and therefore a party can in advance waive this. This position is strongly sustained by 1 Pom. Eq. s. 130. See *Lounsberry* v. *Catron,* 8 Neb. 469. *Burns* v. *Mearns,* 44 W. Va. 746, is against this last position; but the particular question was not considered. It has been suggested, that this Court of its own motion, may refuse to try a jury case in equity; but I think this Court, where it has jurisdiction, ought to pass on the rights of the parties as they were at the date of the decree in the circuit court.