## EDWIN J. MERCELIS ET AL.
### *v.*
## JOHN A. WILSON ET AL.

---

Equity, No. 792.

1. A court may, in its discretion, permit an amendment to a bill to con-

Mercelis v. Wilson.

form to the proof, where the amendment is not repugnant to the original bill, and does not present an entirely new or essentially different case, and the case is tried upon the same theory upon which it would have been tried had the original bill been like the amended bill.

2. The Federal court has jurisdiction, under the Porto Rico Code of Civil Procedure, § 282, providing that an action may be brought by any person against another who claims an interest in real property adverse to him, for the purpose of determining such adverse claim, to entertain a suit in equity to quiet title in confusion of boundaries, and to prevent a multiplicity of suits and irreparable injury.

3. Where a party in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that a plain and adequate remedy at law exists.

Opinion filed March 29, 1912.

---

*Mr. Joseph Anderson, Jr.,* for complainants.

*The Attorney General of Porto Rico* for defendants.

CHARLTON, Judge, delivered the following opinion:

This is a motion interposed on behalf of respondents to set aside an order made heretofore, alleged by respondents to have been made improvidently, under which the complainants herein were permitted to file a bill of review.

For the purpose of this decision it is unnecessary to set out in detail the complicated facts involved; but it will be sufficient to state that complainants, in their original bill filed in the original case between the same parties, and being No. 602 equity, of the records of this court (5 Porto Rico Fed. Rep. 492), was a bill to restrain the respondents, in their capacity

as executive officials of the government of Porto Rico, and their agents, from trespassing upon certain lands alleged to belong to and to be in the possession of the complainants; to restrain the respondents from entering upon the premises involved, or interfering with the possession of the complainants; for the purpose of avoiding a multiplicity of suits, and for other reasons in the original bill set forth. The respondents in answering denied the allegations of the bill as to possession and ownership and otherwise. The land involved was an extensive swamp situated on the north side of the island, lying between the pueblo of Barceloneta and the city of Arecibo, and separated by a well-defined canal running parallel to the Atlantic Ocean, which was situated at a distance of from 100 feet to more than a mile from said canal, the land lying on the south of it, which was involved in this contention, being generally a swamp or marsh, the whole tract being known as the "Caño de Tiburones." Complainants introduced evidence in support of their contentions, claiming, among other things, that the real boundary of the tract alleged to belong to them was not the opening of the canal as it existed when the acts complained of were alleged to have been done, but another and different line.

Upon the trial of the case it became apparent that both the boundary of the tract and the title to the property would be involved, and upon conclusion of the evidence adduced on behalf of complainants, the court, in denying the motion interposed by respondents to dismiss the case, gave leave to the complainants to amend their bill to conform to the proofs, and directed that the suit should proceed as one to quiet title. Trial then proceeded, and upon April 25, 1910, the court rendered an opinion which was final in its nature, and which decided the questions

Mercelis v. Wilson.

in controversy and fixed the boundaries of the tract as between the complainants and respondents, except that the boundaries remained to be fixed after survey in accordance with the terms of the order.

Subsequently, and upon January 3, 1910, a motion for a rehearing was presented on behalf of complainants, based upon errors appearing on the face of the record, and on the ground of newly discovered evidence. Said motion set out substantially the same grounds as are contained in the bill of review here under consideration. The motion for a rehearing was denied on January 13, 1910; on January 18, 1910, the motion for a rehearing was renewed, and this was denied on January 11, 1911. The bill in this case was filed on March 31, 1911, and on April 29, 1911, the respondents filed a motion to strike same for the reason that it had been filed without leave of court, and that no petition for leave to file or notice to respondents had been presented.

On December 5, 1911, a petition was presented for leave to file a bill of review herein. This petition was presented without notice to the respondents or their counsel, and at a time and under circumstances which prevented the court from acting after a full survey of the full case, such as it has been possible to make since the motion under consideration was interposed.

The authority of the court to allow complainants to amend the prayer of their bill so as to conform to the proofs, and to constitute the same, by such an amendment, an action to quiet title, is here controverted.

The bill as originally filed prayed that the respondents should be restrained from entering into or upon the lands described

and claimed to belong to the complainants, or doing any acts
thereon, and further procceded as follows:

"And your orators pray that these defendants may be re-
quired to produce to this Honorable Court all deeds or titles or
other documents by which they claim or pretend to have any
right to enter upon the lands of these plaintiffs as described
herein."

At the conclusion of complainants' case, respondents moved
to dismiss the bill on the ground that complainants had a plain,
speedy, and adequate remedy at law. The court overruled the
motion, and proceeded with the hearing, and evidence was in-
troduced in relation to the merits as to title, etc., and as to
boundaries. When the proofs were all introduced, counsel for
complainants moved for leave to amend the prayer of the bill
to conform to the proofs, and to quiet their title. This motion
was granted over the objections of the respondents, and the
bill was therefore considered in the light of a bill to quiet title,
as is shown by an entry in the journal of this court, under date
of March 4, 1910.

The complaint, as originally filed, alleged ownership and
possession in complainants, and further alleged that, if respond-
ents were not restrained as prayed, it would be necessary to
resort to numerous and vexatious suits at law, and that irremedi-
able and irreparable injury would result, and the prayer called
upon respondents to produce their titles, as is hereinbefore re-
cited.

These allegations were amply sufficient, with a proper prayer,
to constitute an action to quiet title. In order to promote jus-
tice, courts, in the exercise of their general common-law juris-
diction, in the absence of any prohibitory or of any express

Mercelis v. Wilson.

statutory authority, may, in their discretion, permit pleadings to be amended. 16 Cyc. 342.

The amendment was not repugnant to the original bill, nor did it present an entirely new and essentially different case. The case was tried upon the same theory upon which it would have been tried, had the original bill been like the amended bill; nor did the amendment introduce a cause of action other than that which had been tried. The authority of the court to permit the amendment which was actually made was therefore complete. Tremaine v. Hitchcock, 23 Wall. 518, 23 L. ed. 97. . Very numerous cases decided in courts of the United States, and in state courts, could be multiplied to the same effect. And, while generally proper practice requires that amendments should actually be made, if leave to amend is given, and the cause is tried as though the amendment had actually been made, the necessity for making it is thereby obviated. 31 Cyc. 387. The amendment now complained of was made at the requisition and upon the motion of complainants, but at the suggestion of the court, and, as is now alleged by counsel for complainants, practically under duress of the court. Be that as it may, no effective protest against the action of the court was then made, as the records show, and consequently the complainants are bound by the amendment and by the results which have followed. A party cannot question the validity of a judgment of a tribunal to which he had submitted a question for adjudication. Forsyth v. Hammond, 166 U. S. 506, 41 L. ed. 1095, 17 Sup. Ct. Rep. 665.

There has also been presented a contention that a court is without jurisdiction to entertain a suit in equity to quiet title in confusion of boundaries, and to prevent a multiplicity of

suits and irreparable injury.  The allegations of the bill set
out that complainants are the owners and in possession of the
property described in the complaint; that there is a confusion of
boundaries between the lands claimed by complainants and
those claimed by respondents; and, in case injunction is not
granted, complainants will be required to proceed to recover
possession by numerous and vexatious actions at law; and that
great and irreparable injury and damage to complainants would
result therefrom.  Such jurisdiction in a court of the United
States is fully established, and it will be unnecessary to cite in
support of the proposition that such jurisdiction does exist, any
other authority than is found in Story's Equity Jurisprudence,
§ 221; and 3 Pomeroy's Equity Jurisprudence, § 1384, and
cases there cited.  Such being the case, the complainant is fur-
ther concluded by the decisions of the Supreme Court of the
United States, in the case of Perego v. Dodge, 163 U. S. 160, 41
L. ed. 113, 16 Sup. Ct. Rep. 971, 18 Mor. Min. Rep. 364, where
the court held, under a section of the Code of Civil Procedure
of Utah, as follows:

"By § 3468 of the Code of Civil Procedure of Utah, an action
might be brought by any person against another who claimed
an estate or interest in real property adverse to him, for the
purpose of determining such adverse claim, and this complaint
was, in effect, a bill to quiet title as against an adverse claim,
and prayed, accordingly, for a decree quieting plaintiff's title
and adjudicating that defendants had no title or right of pos-
session; for injunction; and for general relief.

We are of opinion that it was competent for the district court
to grant the relief sought, and that it had jurisdiction of the
subject-matter.  Plaintiff, having voluntarily invoked the equity

jurisdiction of the court, was not in a position to urge, on appeal, that his complaint should have been dismissed because of adequacy of remedy at law. Even a defendant who answers and submits to the jurisdiction of the court, and enters into his defense at large, is precluded from raising such an objection on appeal for the first time. Reynes v. Dumont, 130 U. S. 354, 395, 32 L. ed. 934, 945, 9 Sup. Ct. Rep. 486; Kilbourn v. Sunderland, 130 U. S. 505, 32 L. ed. 1005, 9 Sup. Ct. Rep. 594; Brown, B. & Co. v. Lake Superior Iron Co. 134 U. S. 530–536, 33 L. ed. 1021–1025, 10 Sup. Ct. Rep. 604. Nor did the supreme court of Utah err in overruling the contention that affirmative relief was improperly awarded defendants because they had filed no cross complaint. Such relief was sought by the answer, which was treated by the parties and proceeded on by the court as equivalent to a cross pleading. The objection came too late in the appellate tribunal. Coburn v. Cedar Valley Land & Cattle Co. 138 U. S. 196, 221, 34 L. ed. 876, 886, 11 Sup. Ct. Rep. 258."

The power of a court, such as this court, to entertain a suit in equity to quiet title under the provisions of law in force in Porto Rico, has been upheld in many states of the Union, in relation to the local statutes of many of the states of the Union. A statute identical with the Porto Rico statute: "Sec. 282. An action may be brought by any person against another who claims an interest in real property adverse to him, for the purpose of determining such adverse claim." P. R. Code Civ. Proc. was before the Supreme Court in the case of Ely v. New Mexico & A. R. Co. 129 U. S. 291, 32 L. ed. 688, 9 Sup. Ct. Rep. 293, and the power of the court was there upheld. To the same effect is the case of Hanley v. Beatty, 54 C. C. A. 445, 117 Fed. 59;

VI. Porto Rico.—4.

Holland v. Challen, 110 U. S. 15, 28 L. ed. 52, 3 Sup. Ct. Rep. 495.

And the right of an owner out of possession to maintain an action to quiet title was sustained in the case last cited, and in the case of North Carolina Min. Co. v. Westfeldt, 151 Fed. 291; Peck v. Ayers & L. Tie Co. 53 C. C. A. 551, 116 Fed. 273; and in Warren v. Oregon & W. Realty Co. 156 Fed. 203, a case arising under the Code and statutes of the state of Washington. In the case of Holland v. Challen, supra, the Supreme Court of the United States held that while alterations in the jurisdiction of a state court cannot affect the jurisdiction of circuit courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the circuit courts as well as by the courts of the state, and the case of North Carolina Min. Co. v. Westfeldt, supra, was to the same effect.

In any event, and under all the facts of the case, and the law as applied to them, the application of the complainants comes too late. In Reynes v. Dumont, supra, the Supreme Court of the United States approved a rule as laid down in "Daniell's Chancery," to the effect that if a party in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that a plain and adequate remedy at law existed. This objection should be taken at the earliest opportunity. Complainants did not do so in this case. To the same effect is the holding of the Supreme Court of the United States (Lurton, J.,) in the case of Louisville & N. R. Co. v. F. W. Cook Brewing Co. 223 U. S. 70, 56 L. ed. 355, 32 Sup. Ct. Rep. 189, as follows: "Where the case is one in which, under any circumstances, relief in equity may be admissible, it

is too late to say that there was an adequate remedy at law only upon review proceedings. Kilbourn v. Sunderland, 130 U. S. 505, 32 L. ed. 1005, 9 Sup. Ct. Rep. 594."

The case chiefly relied upon by the complainants in support of their contention is the case of Freer v. Davis, 52 W. Va. 1, 59 L.R.A. 556, 94 Am. St. Rep. 895, 43 S. E. 164. This case arose in West Virginia, and in its supreme court. From a careful examination of the case it does not appear that there was in force in the state of West Virginia, at the time the opinion was rendered, any provision, by Code or statute, similar to the provision in § 282 of the Porto Rican Code of Civil Procedure, supra, and the case, whatever its merit as a precedent otherwise, proceeded on a different basis and within different lines, and not only is not controlling in the face of the Federal cases hereinbefore discussed, but cannot be considered in any sense influential in determining the question here in controversy. In the absence of a local statute the general course of holding and ruling by the Federal courts must be maintained, to the effect that, in order to maintain an action to quiet title, the complainant must be in possession of the property.

Under the holdings of this court, the people of Porto Rico were found to be the legal owners of a part of the land here in controversy and in the possession thereof, and the complainants were held to be the legal owners of another portion of said land; under the decree of the court the titles to the various parcels were quieted, and, under the direction of the court the boundaries were established.

For the foregoing reasons, and under the foregoing authorities, the petition for leave to file a bill of review herein is denied.