# CHARLESTON

EPHRAIM CREEK C. & C. CO. v. BRAGG *et als.*

Submitted September 22, 1914.  Decided October 6, 1914.

1. BOUNDARIES—*Description in Deed—High-Water Mark.*

    A division line between two tracts of land, described in deeds as starting at high-water mark of a river at a certain point and then following the meanders of the river and binding thereon to another point at high-water mark, so as to include the river in one of the tracts, takes in all of the beach and bank, but does not extend beyond the vegetation line.  (p. 73).

2. SAME.

    High-water mark of a non-navigable stream, called for as a line in a deed of conveyance, is the line to which the river has wholly or practically destroyed vegetation, by its current, wash or flow, and rendered the land unfit for meadow, pasturage or cultivation.  (p. 73).

3. INJUNCTION—*Grounds—Trespass.*

    An owner of land whose title is clear as matter of law, so as to preclude necessity of resort to a jury trial for determination thereof, may enjoin the erection of a building thereon by a stranger, without his permission.  (p. 74).

4. APPEAL AND ERROR—*Harmless Error—Parties.*

    If, in such case, the trespass has been committed by one only of two or more owners of adjacent lands, under a claim of title to the land on which the building is in process of erection, and the plaintiff has made the trespassers only parties to his suit, the decree will not be reversed for omission of the other owners, since the title is only collaterally involved and the appellant is not prejudiced by the omission.  (p. 75).

Appeal from Circuit Court, Fayette County.

Injunction by Ephraim Creek Coal & Coke Company against W. H. Bragg and others.  From a judgment for plaintiff, defendants appeal.

*Affirmed.*

*J. L. Ryan* and *Ryan & Boggess,* for appellants.

*C. R. Summerfield* and *Dillon & Nuckolls,* for appellee.

POFFENBARGER, JUDGE:

The decree appealed from in this cause perpetuates an injunction restraining the defendants, Bragg and Hughes, their agents, servants and employees from digging, excavating or removing the soil from a certain lot or parcel of land, from placing any stone or other building material thereon and from erecting any house or other building thereon.

The plaintiff company owns a large tract of mineral land lying on the north side of New River and operates a large coal mining plant on the same and in close proximity to the small parcel of land involved in this controversy. On the opposite side of New River, there is a tract of land which formerly belonged to one Hazard Bragg who, at his death, devised the same to his son, W. H. Bragg, and his daughter-in-law, Georgia Bragg, for and during their natural lives, and the remainder in fee to the children of. W. H. Bragg and his wife. Under the will, some others of the Bragg family may have interests. The Bragg tract admittedly extends across the river and adjoins the land owned by the coal company. How far it so extends and whether the strip of land thirty-five or forty feet wide above the north bank of the river, on which Bragg and Hughes started to erect a building, is included in the Bragg tract, is the most important question presented.

The division line is described in two deeds by which R. F. Tyree, the patentee of a tract of 125 acres, divided it between James Kincaid and Samuel Kincaid, purchasers, giving to the former 70 acres of the tract, lying north of the river, and to the latter the remaining 55 acres. In the former deed, the line in controversy is described as follows: "Extending along New River and adjoining the other portion of said property  *  *  *  to a sycamore in high-water below said house, and leaving the patent line running through the said survey with the said meanders of said river and binding thereon to the opposite patent line." The description in the other deed reads as follows: "Beginning at a sycamore on high water mark below a house on the North bank of said river, corner to said patent, and with the patent line N. 24 E. 216 poles, crossing said river to a red oak and *beach* in

a small island on the South side of said river and below a mill, and thence S. 22————p———— crossing said river to the North bank, and thence up the river with the meanders thereof to the beginning.''

The Coal Company began preparation for the opening of its mine at a point very near the land in controversy, in the year 1900, and its enterprise has grown to considerable proportions. It now employs some 300 or 400 men and has about 140 or 150 tenement houses, besides a large general store. There is some testimony tending to show that, in the year 1900, some of its tenants had gardens which extended down to the river . Other evidence tends to show the former owner of the land adjoining the Bragg tract had cultivated it down to the river bank. Against this evidence was placed some adduced by the defendants, tending to show acts of ownership by Bragg and his ancestor, beyond the top of the river bank. They have maintained what is called a boat landing at the foot of a path leading down to the river, and there is some testimony tending to show that, while a miners strike was on at the works of the plaintiff, the miners held meetings on the strip in question, or retired to it, claiming it to be the property of Bragg, and that the representatives of the coal company acquiesced in that claim. The basis of the alleged claim and acquiescence is the plaintiff's interpretation of the description of the boundary line. He claims the line described in the two deeds is defined by the high-water mark of New River and evidence was adduced, showing that the river often rises high enough to cover the strip of land claimed, and has been known to go far beyond it and cover the railroad track above it and also the ground on which some of the tenement houses stand.

If the question of title depended upon inconclusive or conflicting evidence of title by adverse possession in the plaintiff, or the location of the boundary line claimed by the defendant, so as to make issues of fact, proper for jury determination, there would be no jurisdiction in equity, without the averment of the pendency of an action of ejectment, or of intent and purpose on the part of the plaintiff to institute such an action, which the bill does not contain. *Freer* v. *Davis,* 52 W. Va. 1;

*Eakin* v. *Taylor,* 55 W. Va. 652. But, if the description of the boundary line is legally certain and definite, so as to raise a question of law for the court, and, thus interpreted, shows title to the land in controversy in the plaintiff, the element of certainty as to the title is established, and equity has jurisdiction, provided the act complained of is such as will be enjoined. *Freer* v. *Davis,* cited, *Sult* v. *Hochstetter Oil Co.,* 63 W. Va. 317, 323.

If, as the defendants assume, the boundary line, as described in the deed, is high-water mark of New River on the north side, the strip of land in controversy would not belong to the Bragg tract, for it lies beyond what is recognized by law, on the admitted facts, as being high-water mark. "High-water mark does not mean the height reached by unusual floods, for these usually soon disappear. Neither does it mean the line ordinarily reached by the great annual rises in the river, which cover in places lands that are valuable for agricultural purposes, nor yet does it mean the meadow land adjacent to the river, which, when the water leaves it, is adapted to and can be used for grazing or pasturing purposes. The line, then, which fixes the high-water mark is that which separates what properly belongs to the river bed from that which belongs to the rightful owners. Soil which is submerged so long or so frequently, in ordinary seasons, that vegetation will not grow on it, may be regarded as the bed of the river which overflows it." 4 Words and Phrases, Title "High-water Mark;" *Welsh* v. *Browning,* 7 N. W. 115 Iowa 690. "High-water mark is co-ordinate with the limit of the bed of the water; and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation and destroy its value for agricultural purposes." 4 Words and Phrases, Title "High-water Mark;" *Carpenter* v. *Board of Commissioners,* 56 Minn. 513; *State* v. *Hanifan County,* 83 Minn. 464; *Bennett* v. *National Starch Mfg. Co.,* 103 Iowa 207; *Dow* v. *Electric Co.,* 69 N. H. 498. A conveyance to "high-water mark" as a general rule vests in the grantee the right to the soil between ordinary high and ordinary low water mark, as incident or appurtenant to the adjacent lands. *Waverly etc. Co.* v. *White,*

97 Va. 176. These judicial enunciations are in perfect accord with reason. The assumed call for high-water mark would not be one for the highest point reached by the water, nor the average point, nor the point at which mere traces of flowage may be found. It would be a call for a point made by the water, a limit shown by the wear of the water, and that would necessarily be a line below which there is no vegetation or practically none. No other kind of a mark is lasting or dependable. Drift decays or is removed and vegetation merely washed down either straightens up or is renewed.

Two surveyors who severally had run the lines in accordance with the respective claims of the parties, testified. Both say the sycamore stump representing the tree called for in the deeds stands some distance from the water's edge, 35 or 40 feet according to one and 50 or 75 feet according to the other. Both began at the stump. Vertically it is 4 or 5 feet above the water as it was when one of the surveys was made and the water seems then to have been well within the banks. One ran obliquely from it to the river and then followed the bank, but whether at low-water or high-water mark is a little uncertain. The other ran back of the vegetation line some distance, claiming the high-water mark to be the highest point at which traces or evidence of flowage can be found. One of these surveys would give the location of the proposed building to the plaintiff and the other would give it to Bragg. The former more nearly following the vegetation line is closer to conformity with the description in the deeds. The excavation for the building is clearly beyond the vegetation line and, therefore, beyond the division line, whether it be high-water mark or low-water mark.

The essential element of good title in the plaintiff being thus established as matter of law, it only remains to inquire, whether the injury complained of and sought to be restrained is such as falls within the preventive remedy by injunction. The owner of land having complete dominion over it, is entitled to have it remain in such condition as he desires. Therefore, any substantial alteration of such condition by a stranger may be enjoined. Upon this principle, the owner of timber lands may enjoin the cutting of the timber. *Pardee*

*et als.* v. *Camden Lumber Co.,* 70 W. Va. 68; *Pardee & Curtin Lumber Co.* v. *Odell et als.,* 71 W. Va. 206. So also will the severance and removal of minerals and other materials be enjoined. There is no proof of purpose on the part of the defendants to carry away any of the soil or material from the strip of land in question, and it is urged, in resistance of the remedy, that the building of the contemplated house will be an improvement of the land and a benefit thereto. But this is clearly a fallacious argument. The owner may not want that sort of structure on his land. He may have other uses for it. It might become necessary to remove the building. It might prove to be a serious obstruction to the free use of the land. Besides, its use by a stranger without permission would be the beginning of an adverse claim of title, highly prejudicial to the true ownership. At any rate, the authorities affirm the applicability of the remedy to a trespass in the form of the erection of a building by one person on another's land without permission. *Long* v. *Ragan,* 94 Md. 462; *Herr* v. *Bierbower,* 3 Md. Chy. 458; *Baron* v. *Korn,* 127 N. Y. 224.

As W. H. Bragg and J. D. Hughes appear to be the only persons who engaged in the erection of the house and, therefore, in the commission of the trespass complained of, the omission to make Mrs. Bragg and other persons interested in the Bragg tract of land parties to this suit was not reversible error, if error at all. The title to the land is not the matter directly in issue. It is the trespass. The title is only incidentally and collaterally involved. And, moreover, the defendants cannot be prejudiced by the omission of persons who might be proper co-defendants. If the plaintiff should have to litigate the same matter over again with the omitted parties, it alone would be the sufferer. The omission of a co-plaintiff, if there were one, would be prejudicial to the defendants. *Beckwith* v. *Laing,* 66 W. Va. 246.

For the reasons stated, the decree complained of will be affirmed.

*Affirmed.*