# CHARLESTON.

BURNS *et al. v.* MEARNS.

Submitted January 31, 1898—Decided April 16, 1898.

1. INJUNCTION— *Trespass—Title—Injury.*

To warrant the interference of a court of equity to restrain a
trespass, two conditions must co-exist: First, the plaintiff's title
must be undisputed or established by legal adjudication; and,
second, the injury complained of must be irreparable in its na-
ture. (p. 749).

2. EQUITY JURISDICTION— *Title—Boundaries to Land.*

A court of equity has no jurisdiction to settle the title and
boundaries of land, when the plaintiff has no equity against the
party who is holding the same. (p. 749).

Appeal from Circuit Court, Upshur County.

Suit by David Burns and others against William Mearns for an injunction. The injunction granted was dissolved, and plaintiffs appeal.

*Modified and Affirmed.*

W. E. HAYMOND, for appellants.

U. G. YOUNG and C. C. HIGGINBOTHAM, for appellee.

MCWHORTER, JUDGE:

David Burns, G. M. Burns, and L. S. Filbert presented their bill in chancery to the judge of the circuit court of Upshur county against William Mearns, alleging that the said David and G. M. Burns were the owners and had the undisputed legal title to a tract of two thousand one hundred acres of land by actual survey, but mentioned and described in some of the title papers as one thousand nine hundred and sixty acres, lying on the head waters of Little Kanawha river, in Upshur county, being lots Nos. 23 and 29 of the Falley survey of ——— acres; that plaintiff's title was regularly connected with grant from the commonwealth of Virginia, and was a good and valid title in fee simple absolute; that there was an improvement of sixty to seventy-five acres cleared, which had been cultivated and held in actual occupancy, openly, notoriously, continuously, exclusively, and adversely for a period of nearly forty years; that, aside from said improvement, the residue of said tract was in a state of nature, and covered with valuable standing timber, which constituted the chief value of the land; that said David and G. M. Burns were partners in the lumber business, and jointly interested in the ownership of said land; that the timber was growing in value yearly, and that they contemplated allowing the timber to stand and grow upon the land until such time as the market should be suitable for the more profitable disposition of it; that the facilities for the shipment of lumber from that section of the country were becoming better yearly, and that it was increasing in worth and value: that the defendant, Mearns, without right or authority, and without the knowledge or consent of plaintiffs in any way or

manner whatever, as plaintiffs were informed and believed, had gone upon their said land, and cut divers of the valuable poplar trees, had cut them into sawlogs, and proposed to continue to cut said trees, and remove and dispose of the same, to his own benefit; that the cutting of said timber of plaintiffs' on their land was a very great injury to them, and irreparable, for the reasons aforesaid; that adequate damages could not be ascertained, determined, or recovered, and that they were without adequate remedy at law; that plaintiffs had facilities for manufacturing lumber and marketing the same which afforded them peculiar advantages therein; that they did not desire to manufacture the timber on this land and prepare it for market yet, and might not be ready to do so for some time, on account of the advantages aforesaid in waiting, and that the cutting of said timber would cause it to be damaged and spoiled, and render it unfit for market, unless marketed immediately; and prayed that the defendant, his agents, servants, and employes, be restrained and inhibited and enjoined from cutting any of the timber of plaintiffs' on said land, and from removing the same, and for general relief. On the 18th day of January, 1892, the judge of said court granted the injunction prayed for.

On the 9th day of June, 1892, the defendant appeared and filed his answer, to which plaintiffs replied generally, and were granted leave to file a special reply in writing within sixty days. Said defendant in his answer denied all the material allegations of the bill, and averred that the said one thousand nine hundred and sixty acres of land was conveyed by deed dated July 30, 1888, by Henry Simons and wife to said David Burns, and exhibited a copy of said deed; that on the 9th day of November, 1864, W. W. G. Oliver conveyed said tract of land to said Henry Simons, and exhibited a copy of said deed; that said tract of land was returned delinquent for the nonpayment of taxes for the years 1865, 1866, 1867, 1868, 1871, and 1872, in the name of Henry Simons; that in October, 1873, it was sold by the sheriff for the payment of said taxes, and purchased by Jackman Cooper; that said land was not on the and books of said county in the name of Henry Simons for the years 1875 to 1888, both inclusive, and filed a cer-

tificate of the clerk of the county court of Upshur county showing that said one thousand nine hundred and sixty acres of land did not appear on the land books of said county in the name of Henry Simons for any of the years 1875 to 1891, and also certificate showing that it was not on the land book of said county in the name of David Burns from 1888 to 1891, inclusive; and averring that, by reason of the said land being so off the books, it was forfeited to, and vested in the State; further, that on the 19th day of December, 1876, J. M. Bennett conveyed to Charles Collins and Margaret Collins a tract of land on Cave run containing one hundred and nine acres by deed of that date, which deed is exhibited; that said Charles Collins and Margaret Collins have held actual, continuous, exclusive, and adverse possession of said tract of land, claiming title thereto, from the said 19th day of December, 1876, to that day, and that he was informed and believed that they had held such possession of the same from the 1st day of January, 1862; that they had a good and paramount title in and to said tract of land; that they had paid taxes on it since the first day of January, 1862, and exhibited the tax receipts; that said land was a part of the said one thousand nine hundred and sixty acres; that on the 31st of October, 1890, Charles Collins and Margaret Collins, of the one part, and respondent, of the other, made and signed a contract in writing, by which the Collinses sold to respondent all the poplar timber standing and lying on said one hundred and nine acres; that said Charles and Margaret Collins agreed to cut said timber at fifty cents per thousand feet; that respondent agreed to pay them one dollar and fifty cents per thousand feet, Scribner's measure, for all logs Nos. 1 and 2, to take all timber from twenty inches and upwards in diameter that would make Nos. 1 and 2 logs, and that respondent should have the right to take said timber at any time between the date of the contract and the 1st day of January, 1895; and exhibited his contract with his answer; and averring that said Charles and Margaret Collins were necessary parties to this suit; and praying that the injunction be dissolved. Depositions were taken by both sides to prove possession, and the lines, about one hundred and twenty witnesses being ex-

amined, the evidence being very conflicting, some fifty witnesses being examined on the part of plaintiffs, and about seventy for the defendant, and it is shown on the part of plaintiffs that they have brought their action of ejectment against Charles and Margaret Collins for the one hundred and nine acres of land.

The cause came on to be heard on the 3d day of June, 1896, upon the bill and answer, general replication, depositions of witnesses, and the exhibits filed in the cause, when the court dissolved the injunction and dismissed the plaintiffs' bill, from which decree plaintiffs appeal, and assign the following errors:  (1) The court erred in dissolving said injunction pending the action of ejectment to settle the title to the land.  (2) The court erred in dismissing the bill, without reservation of rights of plaintiffs as to any other action in relation to the land.  (3) The court erred in not determining the claim of defendant as cloud upon plaintiffs' title, and in not making the injunction perpetual.

As to the first assignment; it appears from the evidence that soon after the institution of this suit the plaintiffs instituted their action of ejectment against Charles Collins and Margaret Collins, the parties with whom the defendant, Mearns, contracted for the timber which he was removing when enjoined.   In his answer defendant, Mearns, sets up title by deed in Charles and Margaret Collins, his vendors in the timber purchase, as to the land, dating back to December 19, 1876, and avers that they had held actual, continuous, exclusive, and adverse possession thereof, claiming title thereto from January 1, 1862, to the institution of this suit, and appellants in their brief contend that the injunction ought to have been made perpetual, and, in any event, that it should not have been dissolved pending the ejectment suit.   In *Cox* v. *Douglass*, 20 W. Va. 175, JUDGE JOHNSON says:   "We can see no reason for an injunction to restrain the cutting of timber on land pending a suit to try the title to the land, unless the defendant is insolvent, or it appears that, if the injunction is not granted, the plaintiff will suffer irreparable damage.   When there is a complete and adequate remedy at law, a court of equity will not interfere."   In the case at bar there is no

allegation in the bill of the insolvency of the defendant, nor even an intimation anywhere in the record that he is insolvent, and there are no special facts set out in the bill showing that appellants' damages would be irreparable, except that they want the trees to stand that they may have the benefit of the growth and increase of value, by such growth and increasing facilities for getting out and marketing the timber. I see nothing in the allegations of the bill to suggest that this is other than an ordinary trespass on land, and if the defendant is solvent, and it is presumed that he is, the plaintiffs have adequate and complete remedy at law. *Watson* v. *Ferrell*, 34 W. Va. 406, (12 S. E. 724). "To warrant the interference of a court of equity to restrain a trespass, two conditions must co-exist: First, the plaintiff's title must be undisputed or established by legal adjudication; and, second, the injury complained of must be irreparable in its nature." *Schoonover* v. *Bright*, 24 W. Va. 698. "A court of equity has no jurisdiction to settle the title and boundaries of land, when the plaintiff has no equity against the party who is holding the land." *Cresap* v. *Kemble*, 26 W. Va. 603; *Watson* v. *Ferrell, supra.*

As to the assignment that "the court erred in not determining the claim of defendant as cloud upon the plaintiffs' title, and in not making the injunction perpetual," the pleadings put squarely in issue the title to the property, both legal and equitable, and the depositions on the questions of location and possession are numerous, voluminous, and very contradictory, and this Court has frequently held that "when the decree sought to be reversed is based upon depositions which are so conflicting and of such doubtful and unsatisfactory character that different minds and different judges might reasonably disagree as to the facts proved by them, or the proper conclusion to be deduced therefrom, the appellate court will decline to reverse the finding or decree of the chancellor, although the testimony may be such that the appellate court might have pronounced a different decree if it had acted upon the cause in the first instance." *Smith* v. *Yoke*, 27 W. Va. 639; *Bartlett* v. *Cleavenger*, 35 W. Va. 720, (14 S. E, 273); *Richardson* v. *Ralphsnyder*, 40 W. Va. 15, (20 S. E. 854). But, on exami-

nation of the evidence in this case, I think the decree is supported by a clear preponderance of testimony.

Appellants' second assignment, that the court erred in dismissing the bill without reservation of their rights as to any other action in relation to the land, is met by appellee with the argument that it was not proper to make such reservation in this case, because, on the merits, appellee was entitled to a decree adjudicating his rights with appellants. The bill was dismissed for want of equity, and because it was shown that the appellants could not have their rights adjudicated in this suit, as it was in reality a trial of title. And how could the rights of one party be adjudicated without also adjudicating the rights of the other? And appellee cites *State* v. *Baltimore & O. R. Co.*, 41 W. Va. 81, (23 S. E. 677). It is there held that "when a motion, and notice of it, state facts which do not constitute cause of suit, there is no error in omitting from the judgment of dismissal the words, 'without prejudice.'" It is true, as appellee claims, that the decree does not preclude the appellants from prosecuting their action of ejectment against Charles and Margaret Collins, because they are not parties to the suit, and are not bound by it, but they should not be precluded from their action at law against the defendant, Mearns, in case they should be advised to prosecute one. I deem it of little practical difference whether the reservation is made in this case or not, but as in *Christian* v. *Vance*, 41 W. Va. 754, (24 S. E. 596), it is held to be improper to dismiss a bill in chancery involving questions of title, for want of equity, without reserving the legal rights of the parties, the decree will be so modified as to dismiss the bill without prejudice, and with such modification is affirmed, with costs to the appellee as the party substantially prevailing.

*Modified and Affirmed.*