WEST VIRGINIA PULP & PAPER CO. v. DODRILL et al.

(District Court, N. D. West Virginia. March 15, 1915.)

1. BOUNDARIES �köm26—SUIT TO DETERMINE—JURISDICTION.

A court of equity is without jurisdiction to determine disputed questions of boundary, unless as incidental to the granting of some equitable relief.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 139, 140; Dec. Dig. ⊖⟶26.]

2. VENDOR AND PURCHASER ⊖⟶215—PURCHASER FROM PURCHASER—MISTAKE AS TO BOUNDARY.

A grantor through mesne conveyances from a former owner of land ·described in the several conveyances by metes and bounds in accordance with the original survey and patent, in the absence of fraud or misrepresentation, has no equity to require from prior grantors a conveyance of land other than that so described because such former owners may have mistakenly supposed the lines to run differently.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 449–452; Dec. Dig. ⊖⟶215.]

⊖⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the West Virginia Pulp & Paper Company against James M. Dodrill and J. M. Hoover, executors of Charles M. Dodrill, deceased, and others. Decree for defendants, other than the executors.

On June 26, 1784, there was surveyed for Samuel Hanway 344 acres of land in Monongalia county (now Randolph), this state, situate "on Elk river, including Burkam's Camp, bounded as followeth, viz.: Beginning at 2 poplars on the north side of said river; thence S. 20° E. 160 ps. to a poplar and cucumber, S. 70° W. 356 ps. to a poplar and W. O., N. 20° W. 60 ps. to a pop'r and lynn, N. 55° E. 366 ps. to the beginning." Returned with this survey, and as a part thereof, was a plat of the land of which the following is a rough reproduction:

For this land a grant was issued by Patrick Henry, Esq., Governor of the commonwealth of Virginia, in the terms of the survey, to Samuel Hanway on December 27, 1785. Hanway sold and conveyed it, September 14, 1807, to Ann Mace. In a chancery cause of Daniel Capito's Administrator v. Ann Mace and Others it was sold under decree from Ann Mace and purchased by Peter Conrad, to whom David Goff, special commissioner appointed by the court for the purpose, conveyed it November 3, 1836. In the deed from Hanway to Ann Mace the description given is the courses and distances set forth in the survey and patent. In Commissioner Goff's deed to Peter Conrad the courses and distances are not given, but their ascertainment is left to be secured from the proceedings in the chancery cause directing its sale. Peter Conrad's daughter married Jeremiah Cowger, and by this marriage three sons were born, Lewis, Peter, and John, to whom Peter Conrad, on October 29, 1853, conveyed the land, subject to a life estate of his son-in-law, Jeremiah Cowger, therein. No descriptive courses and distances are given in this deed, but the land is described as being the tract "on which Jeremiah Cowger now lives on Elk river, being the same land conveyed to said Peter Conrad by David Goff, Com'r." Lewis Cowger dying, chancery suit was brought by Charles M. C. Dodrill (frequently named as Charles M. Dodrill and Charles McDodrill) to settle his estate, and in these proceedings his one-third reversionary interest in this 344-acre tract of land was sold, and by Joseph A. Thompson, commissioner, conveyed to Charles M. C. Dodrill, the purchaser, by deed of October 1, 1872. On March 17, 1890, John Cowger conveyed to Dodrill his one-third reversionary interest. In neither Commissioner Thompson's deed nor this conveyance of John Cowger is the tract described by metes and bounds; Thompson's deed referring to Commissioner Goff's and Peter Conrad's deeds for description, and John Cowger's deed describing it as about 300 acres lying "on Elk river at the mouth of Valley fork of said river and known as the Jerry Cowger land." Peter Cowger, owning the remaining third interest, died intestate, leaving as heirs at law George W. Cowger, Debby (Cowger) Jackson, Minerva (Cowger) Daft, and Martha E. Cowger. These heirs—Debby Jackson and husband by deed dated March 15, 1890; Minerva

Daft and husband by deed of May 13, 1890; George W. Cowger and wife by deed of January 28, 1891; and Martha E. Cowger by deed of February 6, 1894—conveyed their interests in the land to Dodrill. None of these deeds describe the land by metes and bounds, but describe it as on Elk river and known as the Jeremiah Cowger land.

Melvina Cowger, widow of Peter, did not join in any of these deeds, and subsequently brought suit against Charles M. C. Dodrill to secure a dower interest in her husband's third interest so conveyed to Dodrill by his heirs. Dodrill resisted this claim of dower, but the court determined that she was entitled to it, appointed commissioners to assign it to her, and by its decree of January 7, 1904, confirmed their report of such assignment. Dodrill had, however, died testate pending this suit, and the cause was revived on their motion in the name of his executors and devisees. It was, by the survey made by A. J. Crickard in this suit for dower, clearly disclosed, if it had not been before, that the calls and courses set forth in the original survey, the grant, and in all the title papers to that date that had undertaken to set forth calls and courses at all, did not and could not locate the land as Dodrill claimed it to be located; that is, down Elk river so as to include the bottom or level lands on both sides to S. B. Conrad's land, but that, on the contrary, such calls located such land, in greater part, south of his claimed location, the long upper and lower lines directly crossing the river, instead of paralleling it, and locating a large part of the tract upon the face of Gauley Mountain, instead of along both sides of the river, so as to include the several improvements made by the Çowgers, including their home residence. But this had been discovered before this by Dodrill, for in 1900, at September rules, he had filed his declaration in ejectment in the circuit court of Randolph county against John Cowger, Melvina Cowger, Sampson B. Conrad, and Dennis H. Dean, setting forth the land as he claimed it down the river, and alleging the usual charge of unlawful entry and withholding, on the part of such defendants named, of the possession thereof. John Cowger appeared to this action, entered his plea of not guilty, and an order of survey was entered. Some time before January 25, 1901, Dodrill died, for on that day his death was suggested on record, and the cause was on motion of his heirs and devisees revived in their names. Surveyor Crickard's plat and report, filed in the action on December 28, 1903, again clearly disclosed that the calls of the Hanway survey and grant did not and could not include the land (except a triangle in the eastern end) as claimed by the Dodrills, but must cross the river and land on Gauley Mountain.

These plaintiff heirs and devisees thereupon, on January 30, 1904, filed an amended declaration claiming the land according to a survey made by James Coberly, deputy, for F. A. Parsons, surveyor of Randolph county. To this amended declaration Melvina Cowger appeared and entered her disclaimer to all land embraced in this new claim, save and except the 41 acres that had been assigned to her as dower, as hereinbefore referred to. As to such part of said dower interest of 41 acres as laid within the boundaries claimed by the plaintiffs, she entered her plea of not guilty. John Cowger also appeared and entered his disclaimer to all land lying within the metes and bounds of the original Hanway survey and grant, and entered his plea of not guilty as to any land sought to be recovered from him lying outside of the boundaries of the Hanway grant. The two jointly, on September 5, 1905, tendered a special plea in the action to the effect that in the equity cause, assigning to Melvina Cowger her dower, the location of the Hanway grant of 344 acres had been ascertained and adjudicated. The court took time to consider the objection made to the filing of this plea. In this condition of things, on November 16, 1908, the case was called for trial, the plaintiffs failed to appear, and the action was dismissed for want of prosecution.

The will of Dodrill, probated October 17, 1901, appointed his son, James M. Dodrill, and J. M. Hoover, his executors and clothed them with full power to sell his estate, real and personal, and distribute the proceeds to his children. These children and devisees, by deed of date November 10, 1905, conveyed this 344-acre tract to A. M. Ruckman. It is to be particularly noted that this deed is one of special warranty only; that it bounds the land conveyed as follows

"Beginning at a fallen poplar with pointer, on the north side of Valley fork of Elk river about five rods from said Valley fork, being the corner of the old Hanway survey, and running thence S. 16¼° E., variation 3¾°, 158½ poles, along the lands of George Fretwell and others, to a fallen poplar and cucumber; thence S. 73¾° W., crossing Elk river, 356 poles, to a stake and blazed birch near the top of Gauley Mountain (old corner oak and poplar); thence N. 16¼° W., 60 poles, to a stake (formerly poplar and lynn); thence N. 58¾° E., 368 poles, to the beginning, containing 344 acres, be the same more or less, and being the old Dodrill land, known as Hanway survey"—and that these descriptions, metes, and bounds describe the land as lying across the river on Gauley Mountain, and not down the river, and are taken direct from the report of A. J. Crickard, made of his surveying done for defendants in the ejectment cause of Charles M. C. Dodrill v. John Cowger et al., above referred to, which report was made by this surveyor on the 18th of December, 1903, and filed in this action ten days thereafter. It is further to be noted that this deed from the Dodrill heirs and devisees to Ruckman contains this agreement: "It is understood and agreed by and between the parties hereto that the said A. M. Ruckman, party of the second part, shall at his own expense assume the litigation now pending regarding the title to the said land, and pay the expense of same should there be any costs attached thereto that may stand against any of the said first parties herein."

On November 10, 1905, John Cowger and wife by deed to Ruckman quit-claimed all right, title, and interest to the tract "situate at the mouth of Valley fork of Elk river, known as the Dodrill 344 acres." On November 16, 1905, Ruckman conveyed the land to John A. Innes by deed of special warranty, bounding it therein by the exact calls of the deed (to which reference is made) of Dodrill's heirs to him, taken, as stated, from Surveyor Crickard's report. On March 31, 1906, Melvina Cowger conveyed to Innes her dower interest in the tract. By deed of date May 19, 1908, Innes conveyed this tract, with others, to the West Virginia Pulp & Paper Company (West Virginia corporation), in which the land is described and bounded by these calls taken from Surveyor Crickard's report, and on January 31, 1910, this West Virginia corporation conveyed this land with many others to the West Virginia Pulp & Paper Company, a Delaware corporation, in which its boundaries are not set forth, but reference is made to the Innes deed therefor.

This Delaware corporation has filed this bill for substantially two purposes: First, to require the executors of Charles M. C. Dodrill, as such, to convey the land to it, insisting that the legal title is outstanding in them under the terms of Dodrill's will; second, for a survey and location of the land and for a deed for it "as claimed by the said Jeremiah Cowger and his sons under said Hanway survey and entry." The executors of Dodrill have not answered. The defendant John Cowger has made vigorous defense by both motion to dismiss and answer, so far as the second named item of relief is sought. The material grounds of his defense are: First, that there is no confusion of boundary, location, or description of the Hanway tract; that it does not, and cannot be made to, extend down the river so as to include the river bottoms and his residence and improvement, but can only be located across the river and on the face of Gauley Mountain; second, that the location and boundary of the tract was judicially determined in the equity cause of Melvina Cowger v. Charles M. C. Dodrill, in which dower in the tract was allotted to her notwithstanding Dodrill's defense; third, that Dodrill and subsequent alienees of his are estopped from maintaining this bill and having the relief sought by reason of the institution by Dodrill of the ejectment case against him and others, the defense made by him thereto, and the abandonment and dismissal thereof; and, fourth, because on April 12, 1899, his father, Jeremiah Cowger, made a will (probated May 14, 1909) in which he devised to him the land lying down the river, comprising 166 acres, on which he (John Cowger) had theretofore for 37 years, and upon which he has ever since, lived in open, notorious, continuous, and uninterrupted possession, more than 10 years before the institution of this suit; that such will gave him paper title to such land, and that on November 24, 1903, he conveyed this 166 acres to C. H. Scott, who has since been by tenants in open,

notorious, continuous, and exclusive possession thereof. He is mistaken, however, in his statement that such possession by Scott has been more than 10 years before institution of this suit, because this suit was instituted July 26, 1912. The motion to dismiss was overruled, depositions have been taken, a survey ordered and made by Alba Wolverton, surveyor agreed upon, who has returned a very excellent plat with his report, a copy of which is made part now of this statement, and which, in connection with the plat of the original survey above set forth, fully identifies the locations in dispute.

Talbott & Hoover, of Elkins, W. Va., for plaintiff.
C. H. Scott, of Elkins, W. Va., for defendants.

DAYTON, District Judge (after stating the facts as above). [1] In the case of State of Rhode Island v. State of Massachusetts, 12 Pet. 734, 9 L. Ed. 1233, the Supreme Court has held:

"No court acts differently in deciding on boundary between states than on lines between separate tracts of land; if there is uncertainty, where the line is, if there is a confusion of boundaries by the nature of interlocking grants, the obliteration of marks, the intermixing of possession under different proprietors, the effects of accident, fraud, or time, or other kindred causes, it is a case appropriate to equity."

But generally a court of law is the proper tribunal to determine questions of boundary and location, and equity should only intervene when some special right or defense makes it necessary for it to do so. Security Land Co. v. Burns, 193 U. S. 167, 169, 24 Sup. Ct. 425, 48 L. Ed. 662. And the Supreme Court of Appeals of this state has repeatedly held that a court of equity has no jurisdiction to settle the title and boundaries of land, when the plaintiff has no equity against the party who is holding the same. Burns v. Mearns, 44 W. Va. 744, 30 S. E. 112; Watson v. Ferrell, 34 W. Va. 406, 12 S. E. 724; Kemble v. Cresap, 26 W. Va. 603; Freer v. Davis, 52 W. Va. 1, 43 S. E. 164, 59 L. R. A. 556, 94 Am. St. Rep. 895. And in Hill v. Proctor, 10 W. Va. 59, it is held that:

"The existence of a controverted boundary does not constitute a sufficient ground for the interposition of courts of equity to ascertain and fix that boundary. It is necessary to maintain such a bill that some peculiar equity should be superinduced. There must be some equitable ground attaching itself to the controversy."

In Lewis v. Yates, 62 W. Va. 575, 59 S. E. 1073, it is said:

"When certain lines and corners of a survey are reasonably well identified or admitted, and others are not, courses and distances must be allowed controlling force in determining the location of the latter, when the description by quantity is in substantial agreement with the area of the tract so located, even though there be slight evidence tending to show marked lines, differing from those determined by the courses and distances."

[2] In this case there is absolutely no dispute about the first or beginning corner of the Hanway survey being the fallen poplar and W. O. at A upon Wolverton's map. I think the evidence of Surveyor Crickard and C. H. Scott strongly tends to prove the second corner of the survey at or near E on this map. It seems to me quite probable, from the experience we have had with these old Virginia surveys, that Friend, who made this survey for Hanway, ran this first line and then protracted the others, but, deceived by the contour of the country, thought he was locating the land by such protracted lines down the river and not across it on Gauley Mountain. It is entirely probable and likely true that Ann Mace, Peter Conrad, and the Cowgers, deceived by the pen tracing of the river, as made by Friend on his plat, through the land, instead of across it, may have lived in blissful ignorance of the fact that they were in fact mere "squatters" upon other land than that derived by them in the purchase of the Hanway grant. This does not change the fact that the commonwealth of Virginia did not,

by the Hanway grant, confer title for any other than the land as ascertained by actual survey carefully made by Surveyors Crickard and Wolverton from the recognized and established corner at A and the courses and distance from and to this corner. No reversal of calls can change the inevitable result of fixing the location across the river on Gauley Mountain, instead of down the river, where the Cowgers had "squatted," cleared, and built their homes.

It is not necessary to say that the plaintiff must, both in law and equity, recover, if at all, by virtue of the strength of its own title, and not by reason of the weakness of its adversary's, unless there be some equity existing between it and the Cowgers, in possession of the other land, which it is seeking by this suit to acquire. The fact that the Cowgers sold their interest to Dodrill in the Hanway survey, and that plaintiff is Dodrill's ultimate alienee, did not authorize either Dodrill or it to demand from the Cowgers any other than the Hanway survey, which they sold. Does any equity exist, by reason of contract, fraud, or misrepresentation? So far as John Cowger is concerned, it would necessarily have arisen when he sold his interest to Dodrill. Not the slightest evidence to this effect is shown. Dodrill acquired first the interest of Lewis through judicial proceedings and sale, then John's by purchase, and lastly Peter's by purchase from his heirs. He was very active in his efforts to secure the land down the river, instead of that embraced in the Hanway grant, which he had in fact purchased. He knew full well that the Hanway grant of his did not cover the down-river land. This he disclosed fully when he instituted the action of ejectment, which after his death his heirs abandoned the prosecution of; and it was also disclosed to him when Melvina Cowger instituted her suit for dower against him.

But, aside from Dodrill, what were the relations of Ruckman with the Dodrill heirs and John Cowger? J. M. Dodrill testifies, and it is not denied, that Ruckman himself prepared the deed from the Dodrill heirs to himself, and took it to these heirs and had them sign it. This deed was a special warranty one, into which the exact calls of the Hanway survey, as ascertained by Crickard and embraced in his report and map filed in 1903 in the Dodrill-Cowger ejectment suit, were incorporated and made the descriptive metes and bounds of the land he was buying, and he further bound himself in this deed to assume responsibility for pending litigation about the land and save the Dodrills from any cost thereof. He admits that when he secured from John Cowger his quitclaim deed as to this Hanway survey he cannot remember of Cowger saying anything about its including the land outside the Hanway survey where Cowger lived, and he says that it was at the time or right at the time he secured this quitclaim that he learned the land lay across the river. It is by no means a violent deduction—on the contrary, almost an inevitable one—that he knew this fact before that time, because he says he secured this quitclaim after he bought from the Dodrill heirs, and the report and plat of Crickard, from which he secured the calls for his Dodrill deed to himself, as well as these calls themselves, made very clear that the land lay across the river, not down it.

So far as the subsequent alienees, Innes, the West Virginia Pulp & Paper Company (West Virginia corporation), and the plaintiff are concerned, there is no attempt to show any connection with Cowger touching this matter whatever. It seems to me clear, therefore, that under the law and the facts of this case there is and can be no possible ground for this court of equity to intervene and grant to plaintiff the relief prayed for, other than that of requiring from the executors of Dodrill the conveyance of the naked legal title held by them in and to this land as laid down by Wolverton on his plat by the letters A, E, F, G; and this relief can be granted as against such executors upon the bill taken for confessed and unanswered by them. As to all other matters and parties, the cause must be dismissed.